THE STATE EX REL. WILLIAM JAMES BEVAN v. B. R. WILLIAMS, Judge, and MARGARET DONEGHY, Clerk, of Probate Court of Macon County, Appellants.—291 S. W. 481.

Court en Banc, February 15, 1927.

**1. INFORMATION: Lunacy Inquiry: Insanity: Charge in Language of Statute.** A charge in an insanity inquiry that the alleged lunatic is "a person of unsound mind" and "incapable of managing his affairs" is jurisdictional, and unless these facts are alleged in the information filed in the probate court the entire proceeding is void. But they need not be alleged in the precise words of the statute; language of equivalent import is sufficient. An allegation, among others, that he "is suffering with a disease or mania, and that his condition is such that he is incapable, on account of said mental disability, to manage and take care of and preserve his person and estate," is equivalent to a charge that he is of unsound mind and incapable of managing his affairs.

**2. INSANITY INQUIRY: Notice: Waiver: Appearance.** The appearance by counsel of the person alleged to be of unsound mind is a waiver of defects in the notice of the insanity inquiry required by statute to be given to him. The filing of the information alleging that he is a person of unsound mind does not render him **non sui juris**; on the contrary, the statute, in its requirements of what shall be stated in the notice, assumes that he is competent to make a defense and to employ counsel; and where the record shows that he appeared by counsel, who acted for him at the hearing, objections to a defective or void notice were waived.

**3. ———: Judgment.** The record does not show that a formal judgment was entered by the probate court in the insanity inquiry, but does recite: "and the court confirms such judgment of the jury and the finding is in words as follows: 'We, the jury, find that W. J. Bevan is of unsound mind and incapable of managing his affairs.'" Held, that this is to all intents and purposes an adjudication by the court, and in any event sufficient under the statute (Sec. 448, R. S. 1919) to authorize the appointment of a guardian, and the proceedings should not upon **certiorari** be quashed for the informality.

**4. CERTIORARI: Other Remedies.** Certiorari is not the appropriate remedy to correct excesses and abuses of jurisdiction by the probate court

in the administration of the estate of a person of unsound mind where other remedies are more adequate, especially where the rights of third parties have intervened, who should be made parties to any action affecting their interests.

Corpus Juris-Cyc. References: **Appearances,** 4 C. J., Section 11, p. 1322, n. 64; Section 41, p. 1350, n. 26. **Evidence,** 22 C. J., Section 81, p. 146, n. 46. **Insane Persons,** 32 C. J., Section 93, p. 615, n. 97 New; Section 161, p. 625, n. 59 New; Section 183, p. 635, n. 79; Section 191, p. 637, n. 48; Section 208, p. 642, n. 81. **Judgments,** 34 C. J., Section 1480, p. 1043, n. 14.

Appeal from Macon Circuit Court.—*Hon. Vernon L. Drain,* Judge.

REVERSED.

*Matthews & Jones, George N. Davis, Waldo Edwards* and *Elmer O. Jones* for appellants.

(1) The respondent having been declared sane, the issue of sanity or insanity, so far as it effected the proceedings, was a moot question, and as to the personal status of respondent the judgment availed him nothing. If *certiorari* was available in this case for any purpose, it available only for the purpose of determining the mode of settling property rights of this respondent. Visalia City Water Co. v. Tulare Co., 120 Cal. 219; 6 Cyc. 814; State ex rel. Ry. Co. v. Edwards, 104 Mo. 125. (2) The judgment of the circuit court on the writ of *certiorari* determined nothing necessary for adjudication. It does not vest the respondent with the possession of his property, but leaves him still to his relief at law for his real estate and personal property. The parties in possession of his property, both real and personal, are not bound by the decree in this proceeding; and the judgment of the probate court, even if void, is no defense to claim of title to real or personal property and can be attacked in a collateral proceeding. Skelly v. Maccabees, 272 Mo. 1089; State ex rel. Lathrop v. Dowling, 50 Mo. 134; State ex rel. v. Brasher, 200 Mo. 117; Colman v. Farrar, 112 Mo. 82; State ex rel. v. Shelton, 154 Mo. 670. (3) The judgment of the trial court as to the inquest of insanity being *functus officio,* the respondent has an adequate remedy at law for the recovery of the title and possession of his property. State ex rel. v. Reynolds, 286 Mo. 120; Hammons v. Renfrow, 84 Mo. 341; Shanklin v. Ward, 291 Mo. 1. (4) Due process of law being shown by the proceedings, the fact that the insane person was present by his own attorneys and the cause was continued, that due notice of such continuance and the date of the continuance was served upon the alleged insane person, fulfils all the requirements of the law. Dutcher v. Hill, 29 Mo. 271; State ex rel. v. Guinnotte, 257 Mo. 1. (5) The proceedings of the probate court on the 14th day of February, 1923, together with the record of

the probate court relating to the inquiry, are sufficient to show jurisdiction of the person of the respondent and the cause of action. The recital in the record that the respondent was served with a copy of the complaint and notice of hearing and the date of hearing, together with the record showing that he was in court for the purpose of the hearing, with his attorneys, and that the same attorneys appeared at the hearing, and that the date of hearing was fixed by agreement, is conclusive upon this court. Crow v. Myerseick, 88 Mo. 411; State ex rel. v. Brasher, 200 Mo. App. 117. (6) The record shows that the respondent had availed himself of the right to be represented by counsel before any steps for the hearing were taken and appeared voluntarily on the date of the filing of the petition. The record discloses that such appearance is not by an attorney appointed by the court, nor as a witness, nor did he appear incidentally, but by respondent himself and attorneys of his own choosing and for the purpose of the inquiry and the fixing of a date for the same. Martin v. Mottsinger, 130 Ind. 555; Matter of Bluett, 131 N. Y. 541. (7) While it is true in a lunacy proceeding, the person charged must ordinarily be produced before the jury, still the court may have sufficient reasons shown to dispense with his presence. Where his presence would be attended by danger, great inconvenience or injury to the accused, and the court so finds, or where from the condition of the patient himself it is apparent that his presence might injure him, the court may dispense with his presence at the trial. Royal Arcanum v. Nicholson, 104 Md. 472; Chauvennes v. Priestly, 80 Iowa, 316; McCurry v. Harper, 12 Ala. 823; In re Lambert, 134 Cal. 626; State v. Billings, 55 Minn., 467; State ex rel. v. Guinnotte, 257 Mo. 1. (8) Notice is necessary to constitute due process of law, but appearances in person or by attorney waives notice. An appearance presumes an opportunity to be heard and defend, because courts of general jurisdiction are presumed to follow the course of law. State ex rel. Brasher, 200 Mo. App. 117.

*Carter, Nortoni & Jones* and *Ben Franklin & Son* for respondent.

(1) The statute requires the information to be in writing and to allege that a person in the county is an idiot, lunatic or person of unsound mind and incapable of managing his affairs, and to pray that an inquiry thereinto be had. Sec. 444, R. S. 1919. The above information is jurisdictional, without which the probate court cannot put the accused on trial. Hunt v. Searcy, 167 Mo. 108; Burke v. McClure, 211 Mo. App. 446; Shanklin v. Boyce, 275 Mo. 5; State ex rel. v. Hodgins, 251 S. W. 131; In re Guardianship of Storick, 31 N. W. 582. The information filed herein is far from a compliance with the section of the statute. It does not charge that the

accused is an "idiot, lunatic or person of unsound mind and incapable of managing his affairs." (2) Under the statute the alleged insane person must be notified in writing of the nature of the proceeding, time and place when the proceeding will be heard by the court and that such person is entitled to be present at the hearing and be assisted by counsel. Such notice to be signed by the judge or clerk of the court under the seal of the court and served in person on the alleged insane person a reasonable time before the date set for the hearing. Sec. 446, R. S. 1919. The notice in the case at bar is far from a compliance with the requirements of this section, which notice is likewise jurisdictional, and without which the alleged insane person cannot be placed upon trial. State ex rel. v. Hodgin, 251 S. W. 131; Hunt v. Searcy, 167 Mo. 158; Coleman v. Farrar, 112 Mo. 54; State ex rel. Finch v. Duncan, 195 Mo. App. 541; State ex rel. Crockett v. Satterfield, 274 S. W. 482; Shanklin v. Boyce, 275 Mo. 5; Skelly v. Maccabees, 272 S. W. 1089; Citizens State Bank v. Shanklin, 174 Mo. App. 639; Burke v. McClure, 211 Mo. App. 446. (3) The judgment rolls of the court are controlling. "No presumptions in support of a judgment are to be held in opposition to any statement contained in the record. If it appears that process was served in a particular mode, no other and different service can be presumed." Woodruff v. Lumber Co., 242 Mo. 381. The sheriff's return is a part of the record and is controlling. Cloud v. Pierce City, 86 Mo. 357; Feurt v. Carter, 174 Mo. 289; State ex rel. Crockett v. Satterfield, 274 S. W. 482; State ex rel. v. Grimm, 274 S. W. 456; Wells v. Wells, 279 Mo. 57; Thompson v. Pinnell, 199 S. W. 1013; Williams v. Grudier, 264 Mo. 216. A recital in a record may be impeached by the return of the sheriff. Williams v. Grudier, 264 Mo. 216; State ex rel. v. Gates, 113 Mo. App. 649. (4) *Certiorari* is the proper remedy in this case. State ex rel. Lunsford v. Landon, 265 S. W. 529; State ex rel. v. Jackson, 93 Mo. App. 516; State ex rel. v. Wiethaupt, 254 Mo. 319. No appeal lies from the probate court in proceedings of this character, and this has always been recognized to be the law. In the Matter of Crouse, 140 Mo. App. 545; State ex rel. Nolte v. McQuillin, 246 Mo. 586. (5) It cannot be said that the mere entry of appearance of attorneys for W. J. Bevan can obviate the necessity of service of notice in the proper way. Little v. Browning, 287 Mo. 278; Bell v. Brinkman, 123 Mo. 270; Fuert v. Carter, 174 Mo. 289; Silver v. Silver, 192 Mo. App. 179; Skelly v. Maccabees, 272 S. W. 1089. More especially is this true in view of the decision of this court in the case of Hunt v. Searcy, 167 Mo. 175, where the court in considering these insanity statutes expressly pointed out the unsoundness of Crow v. Myerseick, 88 Mo. 411.

; RAGLAND, J.—This is an appeal from a judgment of the Circuit Court of Macon County, in a proceeding in *certiorari,* quashing the records and proceedings of the probate court of that county, wherein the relator, William J. Bevan, was adjudged to be a person of unsound mind and incapable of managing his affairs.

The purported adjudication occurred on March 1, 1921, and the appointment of a guardian of relator's person and estate. on March 2nd. Following the adjudication of insanity and the appointment of a guardian, relator was taken to the State Hospital for the Insane at St. Joseph, where he was confined until March 19, 1923. On that date he was placed under the care of Dr. M. A. Bliss of St. Louis, a specialist in nervous and mental diseases; on April 19, 1923, Dr. Bliss filed in the probate court "an allegation in writing, verified by oath," that relator had been restored to his right mind; and on the day following, April 20th, the court held an inquiry as to relator's sanity and duly found and adjudged that he had been restored.

Following the relator's discharge, the guardian, on May 1, 1923, filed in the probate court a final settlement of his accounts as such. According to the inventory and appraisement filed by the guardian, the value of the relator's estate at the time he took charge of it was approximately $35,000. The paper filed by him as and for his final settlement disclosed that $7,487.48 is all that now remains of the estate. Relator, contending that the appointment of the guardian was void, on the ground that the probate court was without jurisdiction, evidently instituted this proceeding in order that it might be determined whether in his endeavor to recover his property he was bound to deal with the alleged guardian *as guardian,* or whether he might proceed against him as a meddler, a trespasser.

The contention that the probate court was without jurisdiction to appoint a guardian is based on these grounds: (1) The information by which the inquiry into relator's sanity was initiated was insufficient; (2) relator was not notified of the proceeding in accordance with statutory requirements; and (3) no judgment was rendered by the probate court, adjudging relator to be a person of unsound mind and incapable of managing his affairs.

I. The information alleged, among other things, "that the said William James Bevan is suffering . . . with a disease or mania . . . , and that his condition . . . is such that he is incapa-

**Information.** ble, on account of said mental disability, to manage and take care of and preserve his person and estate . . ."

It is said that the information was fatally defective because it did not allege that Bevan was (1) a "person of unsound mind," and (2) "incapable of managing his affairs." It is true that these are juris-

dictional facts, and unless alleged in the information the entire proceeding was void. [Sec. 444, R. S. 1919.] But it was not necessary that their existence be averred in the precise words of the statute. In charging a statutory crime in an indictment the language of the statute need not be followed; language of equivalent import will suffice. To say that one is suffering from a *disease* or *mania,* and that his condition, on account of *said mental disability,* is such that he is "incapable to manage and take care of and preserve his person and estate," is to say that he is of unsound mind and incapable of managing his affairs. The information did not charge in the alternative that Bevan was suffering from either disease, or mania. "Disease" and "mania" were used as coordinate terms in describing his affliction. That infliction was an infliction of the mind. Mania in its usual and ordinary sense means: derangement of the mind; madness; insanity. And the information further averred that on account of "said mental disability" Bevan was incapable, etc. "Affairs," used in the phrase, "incapable of managing his affairs," relates solely to the person and estate of the alleged incompetent, because the appointment of a guardian to care for these is the whole purpose of the proceeding. The information sufficiently averred that the relator was a person of unsound mind and incapable of managing his affairs.

II.   The information above referred to was filed on February 14, 1921. Thereafter, and on the same day, the probate court issued a written order, signed by the judge under the seal of the court, directed by the Sheriff of Macon County, which after reciting the filing of the information commanded the Sheriff "to take the said William James Bevan and him safely keep until the, probate court of said county shall convene to inquire into the sanity of said William James Bevan." On the same day the sheriff made return of the order as follows: "Served the within summons in the City of Macon, etc., on this 14th day of February, 1921, by delivering a copy of the within petition to the within named defendant, James Bevan." The record of the probate court of the same date recites:

**Notice.**

"Now on this day the court has filed the complaint of E. H. Bevan and Joe Bevan, and the court takes up said complaint and orders Sheriff to bring in one William James Bevan, purporting, as set out under petition, of being of unsound mind. By agreement of both plaintiff and defendant's attorneys, the defendant was turned over to Shelton and Shelton to care for and look after one James Bevan until both plaintiff and defendant's attorneys can agree on a day with the court for hearing, and said defendant's attorneys to look after and care for said defendant until a day can be agreed

upon and cause of action heard. On said agreement court continued said matter until time for hearing."

On February 17, 1921, a writ was issued and placed in the hands of the Sheriff, which, omitting the formal parts, was as follows:

"Whereas, the following transcript herewith attached and copy of complaint filed in this court on the 14th day of February, 1921, the accusation and complaint being that one said William James Bevan is a person of unsound mind, and whereas by agreement of both plaintiff's and defendant's attorneys, that one said William James Bevan was turned over to Shelton and Shelton in jurisdiction of this court, has absented himself from the jurisdiction of this, the Probate Court of Macon County, Missouri, and fears being entertained by this court, and other interested parties that harm may come to him or others, I hereby command you, the Sheriff of Macon County to forthwith convey and deliver one William James Bevan in the Probate Court of said Macon County, Missouri, as soon as convenient and possible for you to recover one William James Bevan."

On this writ the Sheriff made return February 25, 1921, as follows:

"In conformity with the within writ the undersigned left Macon on February 17, 1921, and went to Bucklin, Mo., to apprehend the within named William James Bevan, being unable to find him there, proceeded to Brookfield, Mo., and after diligent search was unable to find him and later learned that the said Bevan was in the Schuyler County. . . . On February 23rd said Bevan surrendered himself and was placed in the county jail and required a guard during the entire night."

The record entry of the probate court relating to the hearing, on March 1, 1921, is as follows:

"E. H. Bevan and Joe Bevan, Plaintiff, v. William James Bevan, Defendant.

"Now on this day comes on for hearing an insanity inquiry of said William James Bevan, filed in the court the 14th day of February, 1921, and continued until Tuesday, March 1, 1921, and now on this day, both plaintiff and defendant through their attorneys, answer ready for trial.

[Here follow recitals relating to the empaneling of the jury.]

"The following witnesses were introduced on behalf of the plaintiff: Will Banta, Sheriff, Chas. Oxley, night watchman, William Stanfield, Chief of Police, Tom Holman, Deputy Sheriff, Stewart Humphrey, Hotel Clerk, and the following expert witnesses were introduced on behalf of said plaintiff; Dr. Gerdine of Still-Hildreth Sanatorium; and Dr. Hoyle, also of the Still-Hildreth Sanatorium, and the following physicians: Dr. C. C. West of New Cambria, Dr. W. E. Bradley of Ethel and Dr. A. M. Raines of Macon, Missouri.

and the following witnesses: O. L. Polson, banker of Ethel, H. C. Young, undertaker of Ethel; Joe Bevan, brother of defendant; E. H. Bevan, also brother of defendant.

"The court further finds that the said W. J. Bevan is violent, and on account of said condition, and on recommendation of defendant's physicians, his presence is dispensed with, Shelton and Shelton and George N. Davis, his attorneys, appearing in his behalf, and there being no witnesses introduced by defendant's counsel, forms of verdicts were submitted to the jury as follows on behalf of the plaintiff: . . . and on behalf of the defendant . . . [Forms omitted.]

The verdict submitted on behalf of plaintiff was unanimous and signed by R. L. Wright, foreman, and submitted to court and court confirms said judgment of the jury and the finding is in words as follows:

"In re Estate and Person, William James Bevan, continued.

" 'We, the jury, find that W. J. Bevan is of unsound mind and incapable of managing his affairs.

" 'R. L. WRIGHT, Foreman.'

"The court appoints E. H. Bevan as guardian and curator and orders him to give bond double the amount of the property and on filing and approving said bond, and the completion of stipulations filed, also a waiver of wife of said William James Bevan."

With reference to the question of relator's notice of the proceeding, the records just quoted from expressly or impliedly disclose the following:

The sheriff, in the execution of the order to take relator into his custody and keep him until the court convened to inquire into his sanity, merely delivered to relator a copy of the information which had been filed, charging relator with being a person of unsound mind and praying the appointment of a guardian for him. Upon the receipt of the copy relator immediately consulted with Shelton & Shelton, attorneys at law, and employed them to represent him in the matter. Shelton & Shelton thereupon, on the same day—February 14, 1921—appeared for him in the probate court and there entered into an arrangement with counsel for the informants, and the court, whereby relator was to be placed in the custody of his attorneys, instead of that of the sheriff, until a day for the hearing could be agreed upon by the parties and the court. The presumption is that relator appeared in court with his attorneys, because the record recites: "the defendant was turned over to Shelton and Shelton." But whether he was present in person is not material. Shortly after relator was given into the custody of his counsel he disappeared, and an unavailing search was made for him. At the end of approximately a week he returned to Macon City and sur-

rendered himself to the sheriff who put him in jail. Presently he became violent, and a special guard had to be put over him. When on March 1st, the date fixed for the hearing, came on, he was still so violent that the court deemed it best to proceed without his presence. But his attorneys were there in his behalf; they announced ready for trial and participated in the proceeding.

The statute with respect to notice in such cases is as follows:

"In proceedings under this article, the alleged insane person must be notified of the proceeding by written notice stating the nature of the proceeding, time and place when such proceeding will be heard by the court, and that such person is entitled to be present at said hearing and to be assisted by counsel, such notice to be signed by the judge or clerk of the court under the seal of such court, and served in person on the alleged insane person a reasonable time before the date set for such hearing. If no licensed attorney appears for the alleged insane person at such hearing, then the court shall appoint an attorney to represent such person in such proceeding. . . ." [Sec. 446, R. S. 1919.]

It is plain that relator was never served with a notice which conformed to the provisions of the statute just quoted. Notwithstanding, he appeared generally to the proceeding by his counsel. The naked question therefore is whether such an appearance operated as a waiver of the statutory notice.

In some jurisdictions it is held that an alleged incompetent person cannot waive notice either by appearance in person or by attorney, on the ground that he is incapable of doing so by reason of his alleged incompetency. [McGee v. Hayes, 127 Cal. 336; Morton v. Sims, 64 Ga. 298.] In others it is held that there may be a waiver by appearance, in person or by attorney. [Martin v. Motsinger, 130 Ind. 555; Stewart v. Taylor, 111 Ky. 247.] The general rule is that all persons *sui juris* may enter an appearance, either in person or by attorney, and thereby confer jurisdiction over their person upon the court. The filing of an information alleging that an individual is of unsound mind does not render him *non sui juris;* it raises no presumption of incompetency. The statute in its requirements as to what shall be stated in the notice to the alleged insane person assumes that he is competent to make a defense and to employ counsel for that purpose. The holdings in the jurisdictions first referred to seem illogical, because the presumption of sanity continues for all purposes until overthrown by an adjudication to the contrary. In Crow v. Meyersieck, 88 Mo. 411, it was held that objections to a defective or void notice of such a proceeding as the one under review were waived by the general appearance thereto of the alleged insane person; and that holding has not been overruled or criticized by any subsequent decision of this court. In this case there is no sugges-

316 Mo.—43.

tion in the record, or out of it, that relator did not in fact appear to the proceeding in which he was adjudged to be of unsound mind, by counsel of his own selection; or that his counsel were not given ample time and opportunity to prepare and present any defense they thought proper or available. By such appearance he waived service of the statutory notice. And it might be added that, so far as the failure to give him formal notice is concerned, he was not thereby deprived of a single right vouchsafed him by either statute or constitution.

III. No formal judgment was entered by the probate court in the proceeding under review, but the record recites: "and the court confirms such judgment of the jury and the finding is in words

**Judgment.** as follows: 'We, the jury, find that W. J. Bevan is of unsound mind and incapable of managing his affairs.' " This was to all intents and purposes an adjudication by the court. In any event it was sufficient to authorize the appointment of a guardian. The statute provides: "If it be found by the jury or the court sitting as a jury that the subject of the inquiry is of unsound mind and incapable of managing his or her affairs, the court shall appoint a guardian of the person and estate of such insane person. . . ." [Sec. 448, R. S. 1919.]

In addition to the records which have been reviewed the relator points out others which show, as he contends, that the probate court in many matters pertaining to the administration of his estate exceeded its jurisdiction. For the correction of such excesses or abuses other remedies are more adequate than a proceeding of this character. In some of the matters complained of the rights of third parties have intervened; in any action affecting the interests of such persons they should be made parties in order that they may be concluded thereby.

In view of the conclusions reached the judgment of the circuit court must be reversed. It is so ordered. All concur, except *Graves, J.,* absent, and *Blair, C. J.,* who dissents.