HARRY O. RUCKERT, Guardian of Person and Estate of JOHN G. RUCKERT, Appellant, v. KATIE MOORE, — 295 S. W. 794.

Division One, May 24, 1927.

1. **INSANITY INQUIRY: Strict Compliance with Statutes: Jurisdiction.** Statutes prescribing the procedure for determining whether a person is of unsound mind and incapable of managing his affairs must be strictly followed, and all the proceedings must be in strict compliance with their requirements; and if any statutory prescription is omitted from the information, or from the notice, the court does not acquire jurisdiction, and the proceedings, unless the error is waived, are void.

2. ————: **Information: Omission of Unsound Mind.** Since the statute (Sec. 444, R. S. 1919) provides that "if information in writing . . . be given to the probate court that any person in its county is . . . a person of unsound mind, and incapable of managing his affairs," an information charging that a person is incapable of managing his affairs, but omitting to say that he is "of unsound mind," does not comply with the statute, and does not confer upon the probate court jurisdiction to inquire into the sanity of such person, and an order adjudging him, in his absence, to be "of unsound mind and incapable of managing his affairs" is void.

3. ————: **Notice: Omission of Statutory Requirements.** A notice addressed to and served upon a supposed insane person that "information in writing has been filed in this court alleging that you are incapable of managing your affairs and praying that inquiry be had relative to said matter" does not comply with the statute (Sec. 446, R. S. 1919.) which requires that the notice must state "the nature of the proceeding . . . and that such person is entitled to be present at said hearing and to be assisted by counsel." It does not inform him that the information charges him to be a person "of unsound mind," or that he is "entitled to be present" at the hearing, or that he is entitled "to be assisted by counsel," and such statutory requirements being omitted from the notice the court acquires no jurisdiction to adjudge him insane, or to appoint a guardian of his person and estate, at least in the absence of an appearance and waiver.

4. ————: ————: **Waiver: Failure to Appear: Appointment of Attorney.** The notice to the subject of the lunacy inquiry having failed to state that he was "entitled to be present at said hearing and to be assisted by counsel," and the order adjudging him "to be of unsound mind and incapable of managing his affairs" having stated that "he is not present, but is represented by a practicing attorney, appointed by the court," it cannot be held, in a later suit in the circuit court in which his conveyance of land is involved, that he waived an omission of those statutory requirements from the notice. The attorney, not being employed by him, or appointed with his acquiescence or approval, could not represent him in entering his appearance, and the court acquired no jurisdiction, either by such defective notice or such attempted waiver, and the order appointing a guardian of his person and estate was void.

5. **PLEADING: Right of Guardian to Sue: Plea in Abatement: Probative Force.** In a suit by the guardian of another to set aside a deed made by such other, if the grantee, by special or specific denial in her answer, in the nature of a plea in abatement, properly raises the issue of the right or capacity of the plaintiff to bring and maintain the suit as guardian, the plea must necessarily be sustained, if the probate court had no jurisdiction to appoint a guardian for such person. But though she does not specifically

raise that issue, still if she by her answer tenders the issue whether such other person had mental capacity to make the deed, the order of the probate court appointing plaintiff guardian, being shown to be void because of lack of jurisdiction, is not conclusive or of probative force upon the latter issue.

6. JUDGMENT: Without Jurisdiction: Collateral Attack. A judgment or order which the court had no jurisdiction to pronounce is void, and has no force or effect either by way of estoppel or evidence, and may be shown to be void in any proceeding founded upon it.

7. ESTOPPEL: Procuring Information in Insanity Inquiry: Later Grantee. The grantee is not estopped to assert that the grantor was competent and capable to make the deed, by the fact that she advised, counseled and procured an information to be filed in the probate court alleging that such grantor was incapable of managing his affairs, or by the fact that she was present when an order was made adjudging him to be of unsound mind and incapable of managing his affairs and appointing plaintiff guardian of his person and estate, where it does not appear that such grantor was induced to change his position, or to make the deed, by reason of such representations respecting his incapacity, or that the purported guardian was induced thereby to change his position, to his injury.

8. ———: ———: Admission. The fact that the grantee aided, counseled and procured the filing in the probate court of an information alleging that the grantor was incapable of managing his affairs, even though not explained or denied by her, is not conclusive of the asserted claim that the grantor was incompetent to make the deed, in a suit, by an illegally appointed guardian, to set aside the deed; but it is the province of the chancellor to give to such implied or express admission a just weight in reaching a just conclusion on the issue whether grantor had sufficient mental capacity to make the deed.

9. CONVEYANCE: Incapacity of Grantor: Proof: Test. The presumption is that the grantor was mentally competent at the time he executed and delivered the deed, and therefore the burden of proving his sanity is not upon the person holding under it, but the burden of proving the unsoundness of mind and the incapacity of the grantor rests upon the party who seeks to impeach the deed. And the legal test of the grantor's competency is whether he had sufficient mental capacity to understand the nature and effect of the transaction; and if he had such understanding, his deed is valid, although his mind may be impaired by age or disease.

10. DECREE: Suit by Unauthorized Guardian: Quieting Title in Defendant. In a suit to set aside a deed on the ground that the grantor was incapacitated to make it, brought by the supposed guardian of the grantor, who presumes to act for and on behalf of his said ward, under appointment of the probate court in an insanity inquiry, of which that court had no jurisdiction and whose orders therefore were wholly void, and wherein the only other party is the grantee, and wherein the proper finding is that the grantor had sufficient capacity to make the deed, the decree should not confirm the deed and vest the title in the grantee, although a prayer therefor is contained in her cross-bill, for such decree affects the rights of the grantor, who is not a party and therefore as to him is coram non judice, but the decree should simply dismiss the petition and adjudge the costs against plaintiff.

Corpus Juris-Cyc. References: Appeal and Error, 3 C. J., Section 589, p. 696, n. 61. Deeds, 18 C. J., Section 515, p. 428, n. 71, 72; Section 551, p. 443, n. 19. Estoppel, 21 C. J., Section 142, p. 1140, n. 6; p. 1142, n. 10. Evidence, 22 C. J., Section 502, p. 417, n. 65. Insane Persons, 32 C. J., Section 179, p. 634, n. 58; Section 183, p. 635, n. 79; Section 185, p. 636, n. 6; Section 187, p. 637, n. 23; Section 191, p. 638, n. 50; Section 222, p. 646, n. 71-76; Section 230, p. 648, n. 36; Section 249, p. 653, n. 53. Judgments, 33 C. J., Section 61, p. 1106, n. 58.

Appeal from Lawrence Circuit Court.—*Hon. Charles L. Henson,* Judge.

AFFIRMED *in part* and REVERSED *in part.*

*Charles R. Landrum* and *Robert Stemmons* for appellant.

(1) The defendant advising and encouraging the filing of the information of insanity against the grantor in her deed is estopped to deny the invalidity of said deed. McCune v. Goodwilly, 204 Mo. 306; Zimmer v. Massey, 117 Mo. App. 344; State ex inf. Killam v. School District, 277 Mo. 458; Schneider v. Schneider, 224 S. W. 1; Dutcher v. Hill, 29 Mo. 271; Browne v. Appleman, 83 Mo. App. 79; Curtis v. Moore, 162 Mo. 442; Cornwall v. Gasser, 85 Mo. App. 678; State Bank v. Frame, 112 Mo. 502; Suddarth v. Robinson, 118 Mo. 286; Perry v. Hall, 75 Mo. 503; 21 C. J. sec. 2, page 1060. (a) Under the law it was necessary to file an information charging that said John G. Ruckert was incompetent in order to set the machinery of said court in motion. The information was filed on July 30, 1923. The adjudication of the court was necessarily based upon the charges and allegations contained in the information. Therefore the deed obtained after the preferment of said charges is void. (b) The probate court is a court of competent jurisdiction in insanity matters, and its proceedings cannot be attacked or impeached in a collateral matter.

*William B. Skinner* for respondent.

(1) Unless an insane person has been placed under guardianship, a contract entered into by such person is not void, but voidable, and if made in good faith and no advantage has been taken, it will be upheld. Wells v. Mutual Benefit Assn., 126 Mo. 637; Rhodes v. Fuller, 139 Mo. 179; McKenzee v. Donnell, 151 Mo. 431; Bramm v. Life Ins. Co., 226 S. W. 48; Hill-Dodge Banking Co. v. Lorains, 140 Mo. App. 62. (2) A contract made by an insane person, not in ward, is only voidable and courts of equity will not set aside such contracts if thereby injustice will be done to the other side and such other parties cannot be placed *in statu quo,* or in the state in which they were before the contract was made. Blount v. Spratt, 113 Mo. 48; Wells v. Mut. Ben. Assn., supra; McKenzee v. Donnell, supra. (3) The test of mental capacity to contract is, whether the person possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged; and in order to avoid a contract it must appear, not only that the party was of unsound mind or insane when it was made; but that this insanity was

of such a character that he had no reasonable perception or under-
standing of the nature and terms of the contract. 32 C. J. 726, par.
496; Culler v. Uigler, 117 Mo. 92; Richardson v. Smart, 65 Mo. App.
14; Crow v. Peters, 63 Mo. 429. (4) A conveyance made prior to
an inquisition of lunacy will not, necessarily, but prima facie, be
invalidated by a finding that the person was insane when it was
made. 32 C. J. 743, par. 529; Wiggington v. Burns, 216 S. W. 756.
(5) In order to constitute estoppel *in pais*, there must exist a false
representation or concealment of material facts, it must have been
made with knowledge of the facts, the party to whom it was made
must have been without knowledge or the means of knowledge of
the real facts, it must have been made with the intention that it
should be acted upon, and the party to whom it was made must have
relied on or acted upon it to his prejudice. 21 C. J. 1119, par. 122;
Blodgett v. Perry, 97 Mo. 263.

SEDDON, C.—This is an action brought by plaintiff, in a repre-
sentative capacity as guardian of the person and estate of John G.
Ruckert, to set aside a deed made, executed and delivered by said
John G. Ruckert on August 2, 1923, whereby he conveyed forty
acres of land in Lawrence County to defendant. Plaintiff is a son,
and defendant is a daughter, of said John G. Ruckert. On July 30,
1923, an information was made and filed by plaintiff, Harry O. Ruck-
ert, and a brother, J. B. Ruckert, in the Probate Court of Lawrence
County, informing that court that "J. G. Ruckert is a person incapa-
ble of managing his affairs," and praying that "inquiry be had rela-
tive to said matter." Notice of the filing of said information, di-
rected to J. G. Ruckert, was issued by said probate court on July
30, 1923, reciting that a hearing in said matter was set for August 6,
1923, which notice was served upon said J. G. Ruckert in person by
the sheriff of said county on July 30, 1923. On August 6, 1923, an
order was entered by the Probate Court of Lawrence County, ad-
judging J. G. Ruckert to be "a person of unsound mind and incapa-
ble of managing his affairs," and appointing H. O. Ruckert, plain-
tiff herein, as the guardian of the person and estate of said J. G.
Ruckert. It therefore appears from the pleadings and the proof that
the deed sought to be canceled herein was executed and delivered by
John G. Ruckert about three days after the filing of the information
in the probate court, and about four days before the inquiry and
adjudication aforesaid, resulting in the appointment of plaintiff as
the guardian of the person and estate of J. G. Ruckert.

The petition alleges: "Plaintiff for cause of action states that
he is the duly appointed and legally qualified and now acting guard-
ian of the person and estate of John G. Ruckert; that the said John

G. Ruckert is the father of the plaintiff, guardian as aforesaid, and also the father of the defendant, Katie Moore, *nee* Ruckert.

"The plaintiff states that his ward was, at the time of the execution of the deed hereinafter complained of, the owner in fee simple of the following described land, lying, being, and situate in Lawrence County, Missouri, described as follows, to-wit: The northwest quarter of the northeast quarter of Section 4, Township 28, Range 26, containing forty acres, more or less.

"That on August 2, 1925, his said ward, John G. Ruckert, executed to the defendant herein a warranty deed conveying the land hereinbefore described for a consideration mentioned in said deed of one dollar and services rendered grantor and his deceased wife; that a provision was inserted in said deed reserving to the grantor use of said land during his natural lifetime; that said deed is recorded in Book 147, at page 103, in the office of the Recorder of Deeds for Lawrence County.

"Plaintiff says that, at the time of the execution of said deed, his ward, John G. Ruckert, was of the age of 86 years, weakened in body and mind, and incapable of managing his affairs or transacting business of any kind or nature.

"That, at the time of the execution of said deed, information had been filed with the judge of probate in the Probate Court of Lawrence County, Missouri, to-wit, July 30, 1923, informing said court of the incapacity of the said John G. Ruckert to manage his affairs; that thereupon a hearing was had in said court on August 6, 1923, after due notice to the said John G. Ruckert, and on such hearing the said John G. Ruckert was by the said probate court adjudged incapable of managing his affairs.

"Plaintiff says that the defendant had full knowledge of all of said proceedings in the probate court, sanctioned, advised and concurred in said proceedings; that defendant, knowing the weakened condition in body and mind of the said John G. Ruckert and his incapacity to manage his affairs, used or caused and permitted to be used improper and undue influence on the said John G. Ruckert, on account of which resulted in the execution of the deed herein mentioned.

"Wherefore, plaintiff prays that said conveyance be set aside and for naught held; that the title to the said land be divested out of the defendant and vested in the said John G. Ruckert, and for such other and further relief as to the court may seem meet and just."

The answer recites:

"Comes now the defendant and for answer to plaintiff's petition denies each and every allegation in said petition contained, except the alleged execution of the deed by John G. Ruckert to defendant.

"Further answering, the defendant says that on the second day of August, A. D. 1923, John G. Ruckert, being then the owner of the northwest quarter of the northeast quarter of Section Four, Township Twenty-eight, Range Twenty-six, in Lawrence County, Missouri, for a good, valuable and sufficient consideration, by his deed, duly executed, conveyed the same to this defendant, the said deed being the same one mentioned in plaintiff's petition.

"Wherefore, defendant prays the court by its judgment herein to affirm and confirm such deed and to decree the same to be valid and sufficient in all things, fully vesting the legal title to the real estate described therein in the defendant."

The reply is as follows:

"Comes now the plaintiff in the above entitled cause, and, for reply to defendant's answer herein, denies that the deed executed by John G. Ruckert on the second day of August, 1923, to the defendant was given for a good, valuable or sufficient consideration.

"For further reply, the plaintiff states that the said defendant advised, counselled and procured an information to be filed in the Probate Court of Lawrence County, Missouri, charging and alleging that said John G. Ruckert was a person of unsound mind, and incapable of managing his affairs, and thereafter obtained said deed from said John G. Ruckert previous to the adjudication of insanity by said probate court.

"The plaintiff therefore states that the defendant is estopped to deny the invalidity of said deed on account of the mental incapacity of said John G. Ruckert."

Plaintiff, in support of the cause of action alleged in the petition, introduced in evidence the original information, the original notice of the proceeding and the return of the sheriff thereon, and the order adjudging J. G. Ruckert to be a person of unsound mind and incapable of managing his affairs, and appointing plaintiff as the guardian of the person and estate of J. G. Ruckert, all as filed and entered of record in the Probate Court of Lawrence County in the matter of the insanity proceeding against J. G. Ruckert. Inasmuch as these files and record have a direct bearing upon the question of the jurisdiction of the Probate Court of Lawrence County in the insanity proceeding, the validity of its orders made therein, and the probative effect and the conclusiveness thereof in the instant suit, we will quote the files and record of the probate court *in haec verba.*

The information filed in the probate court reads:

"Come now J. B. Ruckert and H. O. Ruckert and inform the court that J. G. Ruckert, a resident of Lawrence County, Missouri, is a *person incapable of managing his affairs, and pray that inquiry be*

had relative to said matter and if said J. G. Ruckert is found to be incompetent that a guardian be appointed for him and his estate.

"J. B. Ruckert.

"H. O. Ruckert.

"Subscribed and sworn to before me this 30th day of July 1923.

"(Seal)    Eldred Seneker, Judge of Probate."

The notice of the insanity proceeding and of the date of the hearing or inquisition, directed to, and served upon, J. G. Ruckert, is as follows:

"Notice.

"State of Missouri, County of Lawrence, ss.

"In the Probate Court.

"In the Matter of the Alleged Incompetency of J. G. Ruckert.

"To J. G. Ruckert:

"This is to inform you that information in writing has been filed in this court alleging that *you are incapable of managing your affairs* and praying that inquiry be had relative to said matter.

"Wherefore, I have set Monday, August 6, 1923, at 10 a. m., for the hearing of said cause, at which time and place you may be present if you see fit.

"In testimony whereof, I have hereunto set my hand and affixed the seal of said court, at office in Mt. Vernon, this 30th day of July, 1923.

"(Seal)    Eldred Seneker, Judge of Probate."

Endorsed on the back thereof is the following:

"I hereby certify that I have served the within notice in the County of Lawrence and State of Missouri this 30th day of July, 1923, by delivering to the within named J. G. Ruckert a true copy of this notice.

"R. C. McCorkhill, Sheriff of Lawrence County, Mo."

The order entered in the insanity proceeding by said probate court on August 6, 1923, is as follows:

"Comes now to be heard the information filed herein alleging that J. G. Ruckert is a person incapable of managing his affairs and praying for a hearing relative to said matter.

"This cause coming on to be heard and the court sitting as a jury finds that said J. G. Ruckert has been informed of this hearing by notice served on him: *that he is not present*, but is represented by James Potter, a practicing attorney.

"The court, hearing the testimony of witnesses, finds the said J. G. Ruckert to be a person of unsound mind and incapable of managing his affairs.

"And comes H. O. Ruckert and files application and bond in the sum of one thousand dollars, the same being approved by the court,

and asks that he be appointed by the court guardian of the person and estate of J. G. Ruckert.

"Wherefore, it is ordered by the court that J. G. Ruckert is a person of unsound mind and incapable of managing his affairs, and it is further ordered that H. O. Ruckert be and he is hereby appointed guardian of the person and estate of J. G. Ruckert.

"It is also ordered that notice be published in the Lawrence County Record."

Plaintiff adduced testimony tending to show that defendant, Katie Moore, advised the filing of the information upon which the insanity proceeding in question was predicated, and that she was personally present in the Probate Court of Lawrence County at the time the information was filed. Plaintiff also adduced testimony tending to show that John G. Ruckert was mentally incompetent on August 2, 1923, the date on which the deed in controversy was executed and delivered. Defendant was sworn and offered to testify as a witness in her own behalf, but, upon the objection of plaintiff, she was not permitted to testify as a witness upon the ground that she was incompetent and disqualified as a witness under the statute (Sec. 5410, R. S. 1919), which provides that, "in actions where one of the original parties to the contract or cause of action in issue and on trial . . . is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him." Defendant adduced testimony tending to show that John G. Ruckert was mentally competent at the time he executed and delivered the deed in controversy, and that he appreciated, and well knew and understood, the nature, terms and effect of his contract of conveyance; that no unfair or fraudulent advantage was taken of her father by defendant in the premises; and that the deed was made for a fair and valuable consideration, to-wit, services rendered by defendant to said John G. Ruckert and to his deceased wife, the mother of defendant.

At the conclusion of the trial, the trial court made and entered the following judgment:

"And now at this day this cause coming on to be heard, come the parties plaintiff and defendant, in person and by their respective attorneys, and the court having heard the evidence and being fully advised in the premises, dismisses plaintiff's bill and finds the issues for the defendant on her cross-petition and cross-bill.

"The court finds that, on the 2nd day of August, 1923, John G. Ruckert, being the owner of the northwest quarter of the northeast quarter of Section Four, Township Twenty-eight, Range Twenty-six, in Lawrence County, Missouri, for a good, valuable and sufficient consideration, conveyed the same to the defendant, Katie Moore, *nee*

Ruckert, reserving to himself a life estate therein; that such conveyance was made by said John G. Ruckert when in the full possession of his mental faculties and without being influenced thereto by the defendant or any other person, and such deed, in law, vests the title to said real estate in the defendant subject only to the life estate reserved therein to the grantor.

"It is therefore considered and adjudged that the plaintiff take nothing by this action, that the deed from John G. Ruckert to Katie Moore, *nee* Ruckert, dated the 2nd day of August, 1923, and recorded in Book 147 at page 103, in the Recorder's office within and for Lawrence County, Missouri, conveying the northwest quarter of the northeast quarter of Section Four, Township Twenty-eight, Range Twenty-six, in Lawrence County, Missouri, be, and the same is hereby declared to be valid and is in all things confirmed and affirmed and forever binding on the grantor, his heirs and assigns, and that the defendant have and recover of and from the plaintiff her costs in this behalf laid out and expended."

After unsuccessfully seeking a new trial, plaintiff was allowed an appeal to this court.

Several errors are assigned by appellant as ground for the reversal of the judgment of the circuit court. It is claimed by appellant that the order of the Probate Court of Lawrence County, adjudging John G. Ruckert to be a person of unsound mind and incapable of managing his affairs, relates back to the time of the filing of the information in said insanity proceeding, so that the order adjudging John G. Ruckert to be insane is conclusive of the fact that he was insane on July 30, 1923, the date of the filing of the information, and therefore, that the deed in controversy, which was executed and delivered by John G. Ruckert to defendant on August 2, 1923, is null and void. It is also contended by appellant that, inasmuch as the probate court is a court of original and competent jurisdiction in insanity proceedings, its judgment here in evidence is final and conclusive and cannot be attacked collaterally in the instant action. Furthermore, appellant contends that defendant, by her conduct in advising the filing of the information in the probate court, and because of her presence in said court at the time of the filing of the information, is estopped to assert that John G. Ruckert, the grantor in the deed in controversy, was sane when he executed and delivered said deed, and is estopped to deny the invalidity of said deed because of the mental incapacity of the grantor of said deed.

Respecting the contention of appellant that the order of the probate court, adjudging John G. Ruckert to be a person of unsound mind and incapable of managing his affairs, is conclusive of the fact that John G. Ruckert was insane at the time of the execution and delivery of the deed in controversy, we have reached the conclusion,

upon reasons presently to be stated, grounded upon the files and record of the probate court in evidence, that the orders of the probate court in the insanity proceeding are wholly void and without conclusive, or even probative, effect herein.

An insanity proceeding is *in invitum*, and seeks to deprive the citizen of his liberty or property, or both. Such proceeding seeks to take away from the citizen not only his right to the possession of his own property, but also his right to contract freely with respect to his property, and to dispose of and do with it as he will. Therefore, it is said that, "where a statute prescribes a certain method of procedure to determine whether persons are insane, such inquiries must be conducted in the mode prescribed, and the statute regulating such proceedings must be followed strictly." [14 R. C. L. 556, 557.] "Proceedings for an adjudication of insanity against an individual are required to be in strict compliance with the statutory requirements." [32 C. J. 634.]

The statute of this State relating to insanity proceedings (Sec. 444, R. S. 1919) provides: "If information in writing, verified by the informant on his best information and belief, be given to the probate court that any person in its county is an idiot, lunatic or person of unsound mind, *and* incapable of managing his affairs, and praying that an inquiry *thereinto* be had, the court, if satisfied there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury: Provided, that if neither the party giving the information in writing, nor the party whose sanity is being inquired into call for or demand a jury, then the facts may be inquired into by the court sitting as a jury."

**Information.**

Section 446, Revised Statutes 1919, provides: "In proceedings under this article, the alleged insane person must be notified of the proceeding by written notice *stating the nature of the proceeding*, time and place when such proceedings will be heard by the court, *and that such person is entitled to be present at said hearing and to be assisted by counsel*, such notice to be signed by the judge or clerk of the court under the seal of such court, and served in person on the alleged insane person a reasonable time before the date set for such hearing." (Italics ours.)

It is obvious that Section 444 of the statute, supra, requires that the information shall state conjunctively, not only that the subject of the inquiry is incapable of managing his affairs, but, also, that he is an idiot, lunatic or person of unsound mind. The information filed in the Probate Court of Lawrence County charges only that "J. G. Ruckert is a person incapable of managing his affairs," and prays that "inquiry be had relative to said matter." The statutory charge, or allegation, that J. G. Ruckert is an idiot, lunatic or person of un-

sound mind is wholly lacking in the information.  Hence, the initiatory information being deficient in its allegations, because of failure on the part of the informants to comply strictly with Section 444 of the statute, the filing of the defective information conferred no jurisdiction upon the Probate Court of Lawrence County to make inquiry respecting the sanity or insanity of John G. Ruckert, and its order adjudging said John G. Ruckert to be ''a person of unsound mind and incapable of managing his affairs'' was a nullity and void.  This court en Banc, has recently held the statutory allegations to be jurisdictional.  [State ex rel. v. Williams, 291 S. W. 481.]

Our construction of the statute accords with that of the Kansas City Court of Appeals as announced in Burke v. McClure, 211 Mo. App. 446, l. c. 451, wherein it is said: ''This is of a class of cases in which the citizen is sought to be deprived of both liberty and property, and those who seek such a result must do so upon statements which, if true, leave no doubt that the case falls within the statute.  Unless the petition in such a case either follows the words of the statute, or uses language and states facts fully equivalent, it cannot give jurisdiction.  It has been held that an allegation to the effect that a proposed ward is incapable of taking care of himself and his property, being in his dotage, is not sufficient to justify an appointment under a statute authorizing guardianship for insane persons.  [In re Estate of Brown, 45 Mich. 326; In re Storick, 64 Mich. 685; Overseers of the Poor v. Gullifer, 49 Me. 360.]  In State v. Montgomery, 160 Mo. App. 724, 733, the Springfield Court of Appeals declared that, under this statute, 'the affidavit on which the insanity inquiry is based is required to state two things, viz., that the party is an idiot, lunatic, or person of unsound mind and that he is incapable of managing his affairs.  The allegation that he is incapable of managing his affairs is as essential as the allegation that he is of unsound mind.'  It necessarily follows that it is essential to charge in the information that the person sought to be made a ward is an idiot, lunatic, or of unsound mind as to charge that he is incapable of managing his affairs.  Failure of either allegation is fatal to jurisdiction.''

Likewise, the notice issued by the Probate Court of Lawrence County and served upon John G. Ruckert, the subject of the inquiry, is fatally defective and insufficient, and fails to comply with the mandate of Section 446 of the statute, which requires that the ''alleged insane person must be notified of the proceeding by written notice stating *the nature of the proceeding,* . . . and that such person is entitled to be present at said hearing *and to be assisted by counsel.*''  The nature of the proceeding, as defectively stated in the notice issued by the probate court and served upon John G. Ruckert, is that ''information in writing has been filed in

**Notice.**

this court alleging that you are *incapable of managing your affairs* and praying that inquiry be had *relative to said matter."* The notice did not state, or notify John G. Ruckert, that information had been filed in the probate court charging him to be a person of unsound mind, or that an inquiry would be had by said court as to his sanity or soundness of mind. Neither did the notice inform or advise John G. Ruckert that he is entitled to the assistance of counsel at the hearing or inquiry, as required by the statute. Where, as here, the notice served upon the subject of the insanity inquiry is fatally defective because of failure to meet with the requirements of the statute respecting the contents of such notice, the probate court from whence the notice issues acquires no jurisdiction to adjudge the subject of the inquiry insane, and to appoint a guardian of his person and estate, at least in the absence of an appearance by the subject of the inquiry and a waiver, on his part, of the service of the notice, or of any insufficiency therein. [State ex rel. v. Hodgdon, 251 S. W. 131; State ex rel. v. Satterfield, 274 S. W. 482; State ex rel. v. Guinotte, 282 S. W. 68.] While we are mindful that this Court en Banc, in State ex rel. v. Williams, 291 S. W. 481, has recently held that the subject of the inquiry may, by appearance at the inquisition, either in person or by his employed attorney, waive the service of the statutory notice and any defect or insufficiency therein, yet we

**Waiver.** are of the opinion that no waiver by John G. Ruckert of the insufficiency of the information or of the notice is shown by the record herein, or can such waiver be reasonably presumed therefrom. The order of adjudication of the probate court recites upon its face that John G. Ruckert was not present at the hearing and inquisition. It is true that the order of the probate court recites that John G. Ruckert was represented at the inquisition by an attorney, but appellant states in his brief herein that, "upon a hearing of the cause, the said John G. Ruckert *failed to appear and the court appointed . . . an attorney* at the Lawrence County bar to represent him in the insanity proceedings." Such fact being admitted by appellant, it is clear that the representation of John G. Ruckert by an attorney was not because of any voluntary selection or employment of such attorney on his part, but because the probate court, without the request, acquiescence, or approval of said John G. Ruckert, had presumed to appoint an attorney to represent him. Of course, under such circumstances, John G. Ruckert was not bound by such representation by reason of any voluntary action on his part, and, therefore, in our opinion, he cannot be held or deemed to have waived the insufficiency in either the information or the notice served upon him. The Probate Court of Lawrence County was without jurisdiction to proceed with the inquiry or hearing in the insanity proceeding because of the insufficiency of both the in-

formation and the notice, and its orders made and entered therein were null and void.

The general rule is that, to authorize the appointment of a guardian for an alleged incompetent person, his incompetency must first be adjudicated by the tribunal having jurisdiction in such cases. [32 C. J. 653.] Such is the clear direction and intent of our statute (Section 448, R. S. 1919), which provides: "If it be found by the jury or the court sitting as a jury that the subject of the inquiry is of unsound mind and incapable of managing his or her affairs, the court shall appoint a guardian of the person and estate of such insane person, such guardian to be a resident of the State." Inasmuch as the Probate Court of Lawrence County was without jurisdiction to make the order adjudging John G. Ruckert to be a person of unsound mind and incapable of managing his affairs, because of the insufficient information filed and the insufficient notice served therein, it follows that the probate court was likewise without jurisdiction to appoint the plaintiff and appellant herein to the office of guardian of the person and estate of said John G. Ruckert.

**Jurisdiction.**

If the defendant (respondent) herein had, by special or specific denial in her answer, in the nature of a plea in abatement, properly raised the issue of the right, or capacity, of the plaintiff to bring and maintain this suit as guardian of John G. Ruckert, this appeal would necessarily have to be ruled in favor of the respondent on that issue.

**Pleading.**

However, defendant did not raise that issue by her answer, and therefore such issue is not before us on this appeal. But the answer did raise and join the issue, tendered by the petition, whether John G. Ruckert had mental capacity to make the deed in controversy. Inasmuch as it clearly appears from the record of the probate court in the Ruckert insanity proceeding that that court had no jurisdiction to make and enter the orders in such proceeding, because of the insufficiency of both the information and the notice, wherefore the order of adjudication of insanity, and the order of appointment of the guardian, as well, are wholly void, then it unquestionably follows, we think, that the orders and record of the probate court are without any probative force or effect in the instant suit, and hence are not conclusive of the fact that John G. Ruckert was insane, or mentally incompetent, at the time he executed and delivered the deed in controversy.

It is equally clear to us that the record and orders of the probate court in the insanity proceeding may be impeached in the instant suit. It is said in 15 Ruling Case Law, 841: "In every proceeding of a judicial nature, there are one or more facts which are strictly jurisdictional, the existence of which is necessary to the validity of the proceedings, and it is

**Collateral Attack.**

a fundamental rule that a judgment or decree which the court has no jurisdiction to pronounce is void. It is, in legal effect, no judgment, and has no force either by way of evidence or estoppel, but leaves the parties litigant in the same position they were in before the trial. Unless jurisdiction exist, the judgment is not due process of law, and is ineffectual for any purpose. No rights are in any way affected by it, and from it no rights can be derived, and all proceedings founded thereon are invalid. A decision of a court not having jurisdiction, being thus *ipso facto* void, may be attacked in any proceeding, direct or collateral, in which a person seeks to assert a right under such pretended adjudication. It may be attacked at any time when it is sought to be enforced, or in any suit in which its validity is drawn in question.''

Appellant strongly urges that defendant is estopped, by her conduct in advising the filing of the information in the probate court and by her presence in the probate court at the time of the filing of the information, to deny the invalidity of the deed in controversy and to assert that John G. Ruckert was mentally competent to make the deed. We have given careful consideration to the several authorities cited by appellant in support of this contention, all of which announce the well-settled and unquestioned principle of equity that one who makes a representation upon which he expects another person to act, and upon which such other person relies and is induced to act to his injury or detriment, it will not afterwards be heard to question the truth of what was represented, to the injury of the one who had been induced thereby to change his position. In none of the cited cases, however, was that principle applied under circumstances similar to those in the case at bar. In the instant case, it does not appear that John G. Ruckert, the grantor in the deed to defendant, was induced to change his position, or to make such deed, by reason of any representation made by defendant respecting his mental capacity or incapacity to make the deed. Neither does it appear that the purported guardian, plaintiff herein, Harry O. Ruckert, was caused or induced to change his position, to his injury, by reason of any representation made by defendant. Nor can defendant be said to be estopped of record by reason of any written paper, or document, signed by her and filed in the insanity proceeding in the probate court, for obviously she did not subscribe and swear to the information filed therein, and no written declaration signed by defendant appears in the record of the probate court proceeding. We see no reason or room for the application of the doctrine of estoppel herein. If appellant, by such claim of estoppel, means to assert that the conduct of defendant, in advising the filing of the information in the probate court, amounts to either an expressed or implied admission by defendant that her

317 Mo. Sup.—16.

father did not have mental capacity to make the deed, then it is clear to our minds that, by the weight of authority, such admission, even though not explained or denied by defendant, is not conclusive of the truth of the fact claimed to have been admitted, but it was the province and duty of the trier of the ultimate fact (in this equity case, the trial chancellor) to give the admission just weight in settling and deciding the ultimate question of fact involved in this case, namely, whether John G. Ruckert, had sufficient mental capacity to make the deed in controversy. [Cafferatta v. Cafferatta, 23 Mo. 235; Sheperd v. Transit Co., 189 Mo. 362; Dudley v. Railroad Co., 167 Mo. App. 647.]

It remains for us to determine whether the finding of the learned trial chancellor, to the effect that John G. Ruckert was mentally competent at the time he executed and delivered the deed to defendant, is sustained by the weight of the evidence upon that issue of fact.

**Incompetency.** The presumption is that the grantor, or person making a deed, is sane, and therefore the grantee, or person claiming under a deed, is not bound to prove the sanity of the person making it, but the burden of proving the unsoundness of mind and incapacity of the grantor, at the time of execution of the deed, rests with the party seeking to impeach it. [Chadwell v. Reed, 198 Mo. l. c. 379, and cases cited.] As clearly stated in the case last cited, the legal test whether the grantor had sufficient mental capacity to make the deed is the capacity of the grantor to understand the nature and effect of the transaction. "If a person understands the nature of the business in which he is engaged and the effect of what he is doing, his acts are valid, and this is true though the mind of such person may be impaired by age or disease. [1 Parsons on Contracts (7 Ed.) 383.]" [Cutler v. Zollinger, 117 Mo. l. c. 101.]

Measured by this test, the evidence of plaintiff falls far short of showing that John G. Ruckert, the grantor in the deed, did not understand the nature of the transaction and did not appreciate what he was doing in the making of the deed. The witnesses herein were all lay witnesses. Respecting his father's mental capacity, plaintiff testified: "I have had opportunity to observe his mental and physical condition. He is pretty weakly; I guess you would call it dizziness; he is so weak, but he is able to get around. He is not capable of transacting his business affairs." John B. Ruckert testified for plaintiff: "J. G. Ruckert is my father. I have not talked to father very often in the last few months. In the last month or so I have only seen him twice. Both physically and mentally he is in very bad shape, very bad physically and has been for thirty-five years. You can see how he is physically and mentally, as he can't remember any of his business. If he transacts any business he won't know he

did it in an hour afterwards. He doesn't know a thing in the world about his business affairs. I believe the last time I talked business with father was about four or five years ago." Della Cawhorn, a daughter of John G. Ruckert, testified for plaintiff: "I think I am familiar with the mental and physical condition of my father. I have seen my father about twice each year. I do not think father has much ability to transact his business. I base my opinion on his past actions. Father is 86 years of age. He never did have any business qualities about him that I know of. He seemed to think that if he could give the other fellow the best of the trade that was something to be commended." Witness Hain testified for plaintiff: "I boarded at the home of Mr. Ruckert and saw him every day I was there. It is hard to say that he is capable of managing his own affairs. I am sure the man has not been capable of running the place like it ought to be run. John G. Ruckert talked sensible enough, and took an interest around there and talked about the stock, the crops and the neighborhood, talked like any other person. He seemed to be interested in the season, whether it was good or bad, taking an interest just as a person would that was connected with the farm. He wasn't capable of managing the farm like it ought to be." Steve Williams testified for plaintiff: "I have had several conversations with Mr. Ruckert. He came almost every day for a chat when he came to the mail box. As far as I could tell, he was somewhat absent-minded; he would forget, was the most I could tell. Uncle John had lapses of memory in his conversation, I could tell. His conversations were not consistent. Mr. J. G. Ruckert was forgetful and absent-minded. He was an interesting man to talk to. He was at the mail box every day at noon. He would ask me where I had been and said he hadn't seen me for several days, and he had seen me the day before." The foregoing is a fair recital of the substance of the testimony of plaintiff's witnesses respecting the alleged mental incapacity of John G. Ruckert at the time of the execution of the deed in controversy.

Several witnesses testified on behalf of defendant. Witness Turk testified: "My farm joins the Ruckert farm on the east. I have known J. G. Ruckert for thirty years, I guess. He came out in the field where I was plowing and wanted to know if I could go to town with him the next day. He said he was deeding Mrs. Moore (defendant) the west forty of his farm. He told me he was making a will, and I told him I would come in with him. He said he wanted to pay her (defendant) for staying there with him; said she had been there with him for a number of years. And he said he was going to pay her; said he wanted to give her the whole farm, but she didn't want to take it all. I believe he said she would be satisfied with just one forty, and he wanted me to come along, and I told him what hour

would suit me the best and he said he would come along with me, for me to come by after him. His mind seemed all right to me. I didn't see anything wrong with it, any different from what it had been all the time. Mr. Ruckert is quite feeble and very nearly blind. He has been able to get around. It seems like here lately he has to study some to think of things, but if you speak of things, he will remember. He doesn't think quite like he used to; I have heard him speak of it." Witness Osfall testified: "J. G. Ruckert came to see me and spoke of making provision for Katie Moore [defendant]. He said he thought Mrs. Moore ought to have what he had for taking care of them. He said he didn't know what they would have done if it hadn't been for Katie. He asked me to become a witness to the transfer of some property. I witnessed the deed [to defendant] which J. G. Ruckert signed. I heard Mrs. Halterman [the notary public] read it over to him, and she cautioned him very particularly and wanted to know if that was the way he wanted it. At the time he talked to me, and at the time he executed the paper, I think his mind was all right as far as I could see. He is not like a young man, of course. I think he understood fully what he was doing." Witness White testified: "I was at the sale on the 10th of August, and J. G. Ruckert talked to me a little bit about old times; then he spoke about deeding forty acres to his daughter, Mrs. Moore [defendant] the house place, and that some of the children were mad about it and were talking about trying to make her deed the place back. He said it was too bad; however, he couldn't pay her for what she had done for him and his wife. She had stayed there quite a while with them; he told me how long she had been there, but I don't remember. He said he thought he could give her this land if he wanted to, for taking care of him and his wife. His mental condition was like it always had been as far as I could tell. I think he knew what he was talking about." Witness Shriver testified: "I saw J. G. Ruckert sign the deed [to defendant] and acknowledge it before Mrs. Halterman. Mrs. Halterman read it, and he said he took it home with him the day before; he told us what was in it before she read it. He said for me to come up to the office and sign it as a witness. I have known J. G. Ruckert for a long time; always comes in the store when he comes to town. He appeared to us to know what he was doing when he signed this paper. He said I am giving Mrs. Moore the home forty because she had been with him a long time. I do not remember that I noticed his memory was bad; he always complained about being dizzy and rather stumbling. I never did detect any lapse of memory."

Upon a thorough consideration of all the evidence herein, we find that it strongly preponderates in favor of the defendant and sufficiently establishes the fact that John G. Ruckert had mental ca-

pacity to make and execute the deed to defendant, and that he fully understood and appreciated the nature and effect of such transaction. Our finding and conclusion accords with that of the learned trial chancellor, who had the advantage of hearing the testimony of the several witnesses and of observing their demeanor while testifying, and therefore we are of opinion that the judgment of the trial court dismissing plaintiff's petition and taxing the costs against plaintiff should be affirmed.

We think, however, that the learned trial court erred in finding the issues for defendant on her cross-petition and in entering judgment thereon in favor of defendant, affirming and confirming the deed from John G. Ruckert to Katie Moore, dated August 2, 1923. The grantor in said deed, John G. Ruckert, individually, is in no

Judgment.

sense a voluntary party to this action. The action is brought by plaintiff, Harry O. Ruckert, alone, who, as the alleged guardian, presumes to act for and on behalf of his alleged ward, but, as we have held, under appointment of the probate court in an insanity proceeding in which that court had no jurisdiction, and whose orders were wholly void. Consequently, plaintiff's action in bringing and maintaining this suit is in no sense binding upon the alleged ward, John G. Ruckert. John G. Ruckert, individually, is not in court, as a voluntary party in the instant suit, asking that the deed in controversy be set aside or annulled. He, himself, has not questioned the validity of the deed, and there is no reason, so far as we can see, that a judgment be entered upon defendant's cross-petition, affirming and confirming said deed. It follows, we think, that the part of the judgment which is responsive to the prayer of defendant's cross-petition, wherein the deed in controversy is declared to be valid and is in all things confirmed and affirmed and held to be forever binding upon the grantor, John G. Ruckert, who is not a party to this suit and of whose person the trial court had no jurisdiction, is *coram non judice.*

It is therefore ordered that that part of the judgment of the circuit court dismissing plaintiff's petition, and adjudging that the plaintiff take nothing by this action and that the defendant have and recover of the plaintiff the costs of the suit, be affirmed, and that the part of the judgment which is responsive to defendant's cross-petition, or cross-bill, be reversed. *Lindsay, C.,* concurs; *Ellison, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.