Judge Ewing
delivered the Opinion of the Court.
A petition and summons was brought by Dudley against Parker Taylor, on a note for seven hundred and twenty dollars fifty nine cents. Taylor appeared and pleaded that, before and at the time of the execution of said note, he was a lunatic and of unsound mind, and incapable of entering into a valid contract: to which plea the plaintiff demurred and his demurrer was sustained by the Circuit Court; and the only question involved in the case, is as to the sufficiency of the defendant’s plea to bar the plaintiff’s action.
There has been great oscillation in the ancient decisions upon this question. Though all have concurred in the opinion that the heirs or representatives of a lunatic might avoid his acts after his death, many have contended that the lunatic, during his life, could not stultify himself.
In the time of Edward the first, it is said, non-compos was a sufficient plea to avoid a man’s own bond, “ and there is a writ in the Register, for the alienor himself to recover lands aliened by himself during his insanity, dum fuit non compos mentis sum, ut dicet.” But afterwards in the time of Edward the third, a doubt began *309 to arise, and in the trial of an assize, the defendant having pleaded a release, and the plaintiff having replied that he was out of his mind, it was doubted whether the replication should be allowed, upon the silly suggestion and inquiry, “ how he came to remember the release, if he was out of his senses when he gave it.”
As inconclusive and unsatisfactory as was the reason contained in this suggestion and inquiry, it seems to have been seriously adopted by all the judges of England, in the time of Henry the sixth, as the basis of their argument, on a question whether the heir was barred of entry, by the feoffment of his insane ancestor. Law Library, 2nd side page, 410.
From a source like the foregoing, sprang up the doctrine that a man should not be permitted to stultify himself, and so far gained ground, as to be adopted in many of the ancient books as a maxim of law.
But though it had grown into a maxim, and been adopted by many of the ancient law writers as such, it seemed to be so repugnant to reason, that the maniac who signed and sealed an obligation, not having capacity from mental alienation, of knowing what he did at the time, could not rely upon his madness to avoid it, that many of the most distinguished jurists, at various subsequent periods, rejected the maxim as not law, and others though they seemed not inclined to resist it directly, yet, permitted the lunatic to obtain all the advantage of a direct plea of lunacy, by proving his lunacy under the plea of non est factum to the bond sued on. 2. Atkins, 412-13; Mod. 310; 2. Strange,1104; Lord Raymond, 315; 2. Salk. 675.
But whatever may have been the ancient rule, it seems now to be well settled, by the opinions and adjudications of the most enlightened modern jurists, that a lunatic may set up a defence in avoidance of his own contract, that he was non compos mentis at the time of its execution. Rice vs. Post, 15. John. Rep. 503; Webster vs. Woodford, 3. Day’s, 90; Lord Holt, in Cole vs. Robins, Buller's N. P. 172; Yates vs. Boen, Str. Rep. 1104. And Kent, in his Commentaries, 2d vol. 451, uses the *310 following strong language: “The principle advanced by Littleton and Coke, that a man shall not be heard to stultify himself, has been properly exploded, as being manifestly absurd, and against natural justice.”
The plea, therefore, in this case, was a good bar to the action, and the demurrer should have been overruled. But we would suggest, as lunacy may be easily feigned, and is difficult to disprove, that the plea should be satisfactorily established, to entitle the defendant to the benefit of the bar.
Judgment reversed, and cause remanded, that the demurrer to the plea be overruled, and the plaintiff be permitted to reply, if he ask leave to do so, and further proceedings be had, and the defendant is entitled to his costs in this Court.