## Shirleys *vs* Taylor's heirs.

CHANCERY.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Lunatics.   Evidence.   Witnesses.*

Case 26.

JUDGE BRECK delivered the opinion of the Court.

*Sept.* 25.

The case stated.

In 1821, the Bank of Kentucky recovered a judgment in the Jefferson Circuit Court, against Edmund H. Taylor, for $4561 66⅔ and costs. In virtue of an execution which issued in 1823, the judgment was replevied. The replevin bond was signed ''Ed. H. Taylor, by Charles M. Taylor,'' and by Charles M. Taylor and Jas. M'Donald, as sureties. In November, 1824, an execution issued upon this bond, endorsed that notes upon the Bank of Kentucky or Bank of the Commonwealth of Kentucky, would be received in discharge thereof. This execution was levied upon a tract of land in the county of Jefferson, belonging to Ed. H. Taylor, which was afterwards, in July, 1825, sold under a *venditioni exponas*, and purchased by the Bank, at the price of four thousand dollars. The tract was levied on as containing 371¾ acres, more or less, and so sold and conveyed to the Bank. The sale was in gross and not by the acre. The residue of the claim was finally discharged in 1828. The land thus purchased, was sold to John and William Shirley, by the Bank, in 1829, for $3750, and conveyed in 1834.

In 1838, Ed. H. Taylor died, and his heirs and administrator, in 1840, exhibited their bill in Chancery against the Shirleys and the Bank of Kentucky, setting forth in addition to the preceding facts, that their ancestor, the said Ed. H. Taylor, was of unsound mind from 1818 till his death. That he was found to be of unsound mind by the inquisition and judgment thereon, of the Jefferson Circuit Court, prior to the institution of the suit by the Bank, and was a lunatic at the date of the said replevin bond and sale of said land. They insist that the replevin bond and sale were void; that the Bank acquired no title, and that the Shirleys, in their purchase from the

Bank, acquired none. They also alledge, that the land sold for an inadequate price, and that the tract instead of 371¾ acres, contained exceeding four hundred and fifty. They pray that the replevin bond and sale and conveyances, may be declared void, and the possession of the land restored to them upon such terms as the Chancellor may deem equitable.

Allegations of the answer.

The defendants answer and deny that Ed. H. Taylor was of unsound mind at the date of the judgment or replevin bond, they deny that the land sold for an inadequate price, and resist the relief sought.

Decree of the Chancellor.

The Chancellor decreed the replevin bond and sale of the land void, directed an account of rents and improvements to be taken, and after deducting the excess of rents over improvements from $3910, the nett proceeds of the sale under execution, decreed that the heirs of Taylor should pay the residue, being $3261 50, to the Shirley's, and upon their failure to pay the same as directed, that the land or so much thereof as might be necessary to discharge the same, would be subjected to sale, and that the Shirleys surrender possession of the land to the complainants.

To reverse that decree, this writ of error is prosecuted by the Shirleys.

In the revision of the cause, we will first enquire, whether the complainants have established any claim for relief, unless it be upon the alledged ground of their ancestor's lunacy or unsoundness of mind. There is neither allegation nor proof that the judgment was not rendered upon a just and legal demand. There is no intimation, nor is there any proof of any fraud, mistake or unfairness in reference to the judgment, the replevin bond or the sale. The replevin bond, as we have seen, is signed by ''Ed. H. Taylor, by Charles M. Taylor.'' It is returned by the proper officer as the replevin bond of Ed. H. Taylor, and being so returned, acquires the force and effect of a judgment. The complainants alledge, that Charles M. Taylor had no authority to sign the name of his father to the bond, because he was of unsound mind, and incapable of giving such authority. It is not alledged nor pretended that the authority would not have been

ample and the bond valid, but for their ancestor's lunacy or unsoundness of mind.

Shirleys
vs
Taylor's heirs.

When a replevy bond had been executed about 17 years, by one as agent for another, on proof of an agency generally, the presumption is justified, that a sufficient authotity was exhibited to the officer taking the replevy bond.

The testimony is satisfactory, that Charles M. Taylor acted as the agent of his father. The bond was subsequently recognised, and in effect confirmed by the committee of Ed. H. Taylor, as his bond. The authority of Charles M. Taylor was never questioned by either the committee, or by any one of a numerous family, so far as it appears, for more than seventeen years, and not until the institution of this suit. Besides, the presumption is authorized, that sufficient at least ostensible authority was produced to the officer when the bond was executed. We are of opinion the bond ought not to be held invalid, unless shown to be so by reason of the lunacy or unsoundness of mind of Ed. H. Talor, and upon that ground alone we understand the complainants as relying.

The allegation that the land sold for an inadequate price, is not sustained by the testimony. So far from it, we are fully satisfied from the evidence, that $4000, even in Kentucky Bank notes; which the Bank offered to receive in discharge of the judgment, although it is not intimated that the claim upon which it was rendered, was not for par money, was, at the time of the sale, a fair price. The same land was four years afterwards, sold by the Bank for $3750. Nor are we satisfied that the complainants have shown themselves entitled to any relief on account of the alledged excess in the tract over the supposed quantity. The land was levied on and sold as containing 371¾ acres, *be the same more or less.* The only evidence that it exceeds that quantity, is found in the answer of the defendant, William Shirley. He admits, that in a survey which he caused to be made, there appeared to be about 436 acres; but he does not admit there was that quantity, inasmuch as the lines are disputed by those persons who claim the adjoining land. John Shirley died upon the land, and his devisees, one of whom is an infant, deny the allegations of complainants in reference to a surplus. The tract was sold in gross, *more or less*, and we think the complainants have failed to estab-

lish an equitable claim for relief, upon the ground that there is more land in the tract than was supposed.

Upon the whole, we come very satisfactorily to the conclusion, that the complainants have not manifested any right to relief in the case, unless it shall appear that they are entitled to it upon the sole ground that their ancestor was of unsound mind, and that question will now be considered.

The bill alledges, that Edmund H. Taylor had been found to be a person of unsound mind—a lunatic, "by inquisition and judgment of the Jefferson Circuit Court," before the rendition of the judgment against him in favor of the Bank, and of course before the date or execution of the replevin bond. But such does not appear to have been the fact. The judgment, as we have seen, was rendered in 1821, and the replevin bond was taken in November, 1823. There is no evidence of any proceeding whatever, against Ed. H. Taylor as a lunatic, or person of unsound mind, in the Jefferson Circuit Court, till March, 1825. It appears that an inquest was at that time held, and the jury returned that he *was a person of unsound mind*. When he became so, or in what manner his mind was affected or unsound, does not appear from any thing in the proceeding.

The inquisition, therefore, furnishes no evidence that he was a lunatic or of unsound mind, when the judgment was rendered or at the taking of the replevin bond. But to establish lunacy or derangement at those periods, the complainants rely upon the testimony of three witnesses. The first states that he knows Edmund H. Taylor was a person of unsound mind at the date of the judgment, of each execution that issued thereon, of the replevin bond, at the time of the levy and sale, and of the sale from the Bank to Shirley; and in short, from 1818, all the time till his death. But this witness does not state a solitary fact or circumstance upon which his knowledge or opinion is based. He assigns no reason whatever for considering him of unsound mind. His testimony, therefore, is mere naked opinion without facts, and we understand the doctrine to be now well settled, that the mere opinion of a witness as to mental incapacity, without stating the

facts upon which it is predicated, is not evidence. To this rule there are exceptions, such as the subscribing witnesses to a will, testifying as to the capacity of the testator; but this witness does not come within any recognized exception, and we think his testimony entitled to very little, if any consideration; See *Hunt's heirs* vs *Hunt*, (3 *B. Monroe*, 575,) and authorities there referred to.

The testimony of the other two witnesses is liable to the same objection. It is true one of them states that he knew him intimately from 1808, and that in 1818 or 1819, he resigned his office as Receiver of Public moneys at Jeffersonville, Ind. in consequence of mental derangement. The testimony of the other witness is, that in 1818 or 1819, he resigned his office of Receiver, &c. in consequence of his unsoundness of mind or incompetency to attend to the business of the office; and that he continued to get worse and less able to attend to business till an inquest was held and he was found to be of unsound mind; no fact is stated by either of these witnesses, in regard to the appearance, conduct, or acts of the deceased, indicative of derangement. We are left wholly to conjecture as to the manner in which his mind was affected, whether merely enfeebled by age or disease, or whether the affection amounted to positive derangement. No witness speaks of him as a lunatic; he was not so found by the inquest in 1825. From the testimony of one of the witnesses before alluded, that "he continued to get worse and less able to attend to business till an inquest was held," and from the testimony of a witness introduced by the defendants, who states that he transacted business with him personally, till 1823, we think it may be fairly inferred, that his intellect was enfeebled and the loss or decay of it progressive. Such may have been the fact, and still he may have been competent for the transaction of ordinary business, which required but little mental effort. That such was his condition is not only rendered highly probable from the statements of witnesses referred to, but from the fact, that although in possession of property, as returned by the jury of inquest, to the amount of thirty six thousand dollars, it seems not

SHIRLEYS
vs
TAYLOR'S HEIRS.

to have been deemed necessary to take any steps for placing him or his estate under the control of a committee, till 1825; and besides, although alledged to have been of unsound mind from 1818, yet from that time till 1825, a period of six years, not a single act indicative of derangement, folly, or even indiscretion has been established. It seems to us, therefore, that the complainants have not satisfactorily established the fact that their ancestor was a lunatic or of unsound mind at the date of the judgment or replevin bond.

But even if in this we should be mistaken, we are not satisfied they are entitled to the relief sought. As to the judgment, we are very clearly of the opinion it was valid; it was rendered upon a just and legal demand, and even if the deceased had, at the time, been found a lunatic and a committee appointed, yet the judgment would not have been *void*, as settled by this Court in *Allison* vs *Taylor*, (6 *Dana*, 87.) The judgment, therefore, being just and valid, the replevin bond taken in virtue thereof by authority of law, we think was not void, although Edmund H. Taylor was at the time, of unsound mind. The replevy of a judgment was contemplated by the Legislature as a benefit to the defendant, and the right of replevy is, therefore, expressly given. It would be difficult to assign a satisfactory reason why the bond in this case is not equally valid and conclusive as the original judgment. But regarding the replevy as the mere act of Taylor, and that he was, at the time, of unsound mind, it would at most, be voidable, according to the principles recognized by this Court in the case of *Ormsby* vs *Breckinridge*, (1 *J. J. Marshall*, 238.)

And considering it in that point of view, we think the complainants are still not entitled to relief. It rests in the exercise of a sound discretion by the Chancellor, whether, under all the circumstances, the sale made under an execution which issued upon the bond, should be set aside; as we have seen, there was no fraud, oppression, or unfairness in taking the bond, or attending the sale. The levy upon the land appears to have been made by the direction of the son and agent of the deceased. The land sold for a fair price. The proof is that it was

*Margin notes:*

A judgment vs a lunatic, is not, on that account, necessarily void, nor is a replevy bond, but only voidable.

The Chancellor will exercise his discretion in setting aside a replevy bond, even where the defendant who gave it was of unsound mind at its date, and where it was for a just debt, and clear of fraud, or the use of other undue means, refuse to

necessary to sell the land or slaves of Taylor to pay the debt, and that it was more to his advantage that the land should be sold than the slaves.  He had, at the time of the sale, a committee consisting of a son, a son-in-law, and another individual, neither of whom made any objection to the sale at the time, nor did his committee ever make any objection to it, nor any of his family, till the institution of this suit.  If there was any fraud or unfairness in the sale,  why,  it may be asked,  was it not corrected as it might have been,  by his committee,  at an earlier day?  Why did they permit the land to be conveyed to the purchaser and afterwards sold and conveyed to innocent purchasers, without objection or an intimation from any quarter, that the sale under the execution had not been fair and valid?

*Shirleys vs Taylor's heirs.*

*interfere, or to set aside a sale made under execution thereon.*

As to the alledged surplus, the complainants have failed in showing, on that account, any claim to relief.

How the endorsement upon the execution that issued upon the original judgment, directing the Sheriff to make six per cent. interest upon $4000 of the judgment, came to be made, does not appear.  The endorsement was made, as certified by the Clerk, by order of the Judge. The record of the proceedings at law, except a copy of the judgment, is not exhibited; it may have been made by consent of parties, on account of the indulgence extended by the plaintiff.  But the complainants, in their bill, do not complain of it as unauthorized or unjust; but in no view of it, as against the Shirleys, is it entitled to any consideration; it constituted no part of the purchase money for the land in the sale under execution; the proceeds of the sale did not discharge the judgment, independent of the interest.  If too much was afterwards collected, the remedy was against the Bank, but there was no lien upon the land as against the appellants.

In view of the whole, we are satisfied the sale ought not to be disturbed, and that the complainants are not entitled to any relief.

The decree is, therefore, reversed, and the cause remanded, with directions to dismiss the complainant's bill

with costs, and the plaintiffs are entitled to their cost in this Court.

*Pirtle and Browne* for plaintiffs; *Guthrie* for defendants.