## Rath's Committee v. Smith.

(Decided April 26, 1918.)

### Appeal from Logan Circuit Court.

1. Reformation of Instruments—Mistake in Draughting Note—Equity.
—Where a sale was for five hundred dollars, the purchase price to be paid in three equal installments, and it is made to satisfactorily appear that the draughtsman of the mortgage and notes in making mental calculation drew the notes for one hundred thirty-three dollars and thirty-three cents each, instead of one hundred sixty-six dollars and sixty-six cents each, a court of equity will reform the notes and enforce their collection in one action.

2. Insane Persons—Contract of Lunatic.—The contract of a lunatic before inquest is not void but voidable only, and in the hands of an innocent purchaser who takes it in good faith and for value before due and without knowledge of the mental infirmity of the maker, will be upheld.

3. Insane Persons—Contract of Lunatic.—If a lunatic by his contract obtains property which he converts to his own use, from a person acting in good faith and without notice of mental infirmity, and the lunatic is thereafter unable to restore the property, the contract will be upheld.

S. R. CREWSDON and COLEMAN TAYLOR for appellant.

W. V. PERRY for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was instituted to reform three notes of $133.33 each, so as to read $166.66, and to enforce collection thereof when thus reformed as well as to have

a certain house and lot in Russellville declared subject to said debt by reason of a mortgage given to secure the notes for five hundred dollars which were executed by Miss Grace Rath on January 8, 1915. This unmarried lady was considerably more than twenty-one years of age at the time of the execution of the papers sued on, and was the owner of a house and lot in Russellville, Kentucky. She was and had been for several years afflicted with the drug habit and at times was flighty in her conversation. Only a short time after the execution of the notes and mortgage sued on, she was by the Logan county court adjudged a lunatic and confined in the asylum for the insane, where she has since remained. The three notes with the mortgage given to secure them were executed by Miss Rath for the price of an automobile which she purchased from W. J. Barnes, the payee in the notes. By mistake of the draughtsman the three notes intended to represent five hundred dollars, the full purchase price, were drawn for one hundred thirty-three dollars and thirty-three cents, each, when they should have been made for one hundred sixty-six dollars and sixty-six cents, each, so as to make the total sum five hundred dollars. This fact seems clearly established by all the evidence. After the execution and delivery of the notes and mortgage and after the latter had been duly entered of record in the office of the clerk of the Logan county court, Barnes for the first time discovered that the sum of the three notes did not amount to five hundred dollars. At this time Miss Rath had been adjudged insane. Some time thereafter W. J. Barnes, who resided in Tennessee, sold and transferred the notes and mortgage to plaintiff, Eugene Smith, for a valuable consideration before either of the notes became due. Smith also is a citizen of Tennessee and resided at Nashville. He was not acquainted with Miss Rath nor with the property mortgaged to secure the notes but, according to the evidence, made inquiries of a banker friend in Nashville, who once resided in Russellville, concerning Miss Rath and the property, and also made some investigation through the clerk of the Logan county court before purchasing the notes. He was, however, acquainted with the fact that the notes were for a sum less than that called for in the mortgage and less than the debt actually due by Miss Rath. He also asserts that he was wholly unacquainted with Miss Rath's mental condition and

had no information of any defect in or defense to the notes and mortgage, or either of them, and is sustained by the evidence. Smith likewise asserts that his assignor, Barnes, was wholly unacquainted with the mental condition of Miss Rath at the time and before the execution of the papers, and this is fairly proven; and further that at the time of the making of the notes and mortgage she was mentally sound and that her incapacity resulted subsequent to the making of the notes sued on. A number of witnesses testify that Miss Rath for some weeks previous to the making of the papers, exhibited signs of mental derangement; that she was a dope fiend and had been for a long time and acted strangely: It is also in evidence that the mental incapacity of Miss Rath was generally known in and around the town of Russelville where she resided, and that Barnes, before entering into the trade with her by which the notes and mortgage were executed, visited Russellville and examined the property and saw and talked with Miss Rath and had the opportunity, had he exercised reasonable precaution, of discovering her mental infirmity. This court has often recognized the rule that the contract of a lunatic, in the hands of an innocent purchaser for value, accepted in good faith, must be upheld, and it is also a rule frequently recognized by this court that one who purchases for value and without notice, from the grantee of a person of unsound mind, is entitled to protection as a *bona fide* purchaser. Bevins v. Lowe, 159 Ky. 439; Johnson v. Mitchell, 146 Ky. 382; 142 S. W. 675; Campbell v. Kerrick, 142 Ky. 279; 134 S. W. 186; Logan v. Vanarsdall, 27 R. 22. But we do not rest the decision of this case upon this principle.

From the facts we find both Barnes, the payee, and Smith, the assignee, acted in good faith and were wholly unaware of the mental unsoundness of Miss Rath, if such there was at the making of the instrument.

Barnes did not testify in the case, for since he transferred the notes and mortgage, he has taken up his residence elsewhere. Several neighbors, however, did testify that they had known Miss Rath for several years next before the execution of the mortgage and notes, and that she had always conducted her own negotiations and traded on her own account without the aid or assistance of other persons, and they each expressed the opinion that she was a person of sufficient mental capacity to

understand the nature and character of her contracts and to appreciate the value of her property and thought that in trading she was entirely capable of taking care of her interests. On the other hand several other neighbors well acquainted with Miss Rath expressed a contrary opinion. Some of these witnesses said she had been addicted to the drug habit for so long that it had affected her nervous system as well as her mental powers, and that she was not capable of understanding the transaction out of which the notes and mortgage grew. As a general proposition all persons are presumed to possess mental capacity sufficient to contract until the contrary is shown, and the burden of showing mental incapacity is upon the person asserting it. The contract of Miss Rath must be treated as that of a person of sound mind until the contrary is shown by clear and convincing evidence. A judgment of inquest finding a person to be mentally unsound is conclusive only for the time being and is rebuttable at any subsequent time, nor does it have any retroactive effect. In Johnson's Committee v. Mitchell, 146 Ky. 238, it is said: "The fact that a person has been properly adjudged to be of unsound mind is conclusive evidence that such was his condition at the time of the inquest; that it is only *prima facie* evidence of his condition at the time of a subsequent sale and conveyance; and being a mere presumption it may be repelled by oral testimony."

It has also been written that as a charge of insanity is easily made and difficult to disprove, the contract of one presumed to be of sound mind will be upheld unless the evidence clearly established his lack of contractual understanding. In the case of Taylor v. Dudley, 5 Dana 309, it is said:

"As lunacy may be easily feigned, and is difficult to disprove, the plea should be satisfactorily established, to entitle the defendant to the benefit of the bar."

It is also in evidence that Miss Rath received the automobile for which the notes and mortgage were executed and converted the same to her own use, and that it is now impossible to place the parties *in statu quo*. It has been repeatedly held by this court that where a lunatic receives the benefit of the consideration in a transaction with a party who, in good faith and in ignorance of the former's condition, parted with something which the lunatic can not restore, the contract of the lunatic will

be upheld. Smith's Committee v. Forsythe, et al., 90 S. W. 1075; Coleman v. Frazier, 3 Bush 300; Rusk v. Fenton, 14 Bush 490; Stephens v. Snowden, 7 Ky. Law Rep. 744.

The trial court with all the facts before it, aided by a personal acquaintance of the witnesses, parties and circumstances, concluded that Miss Rath was not mentally unable to make a contract at the time the notes and mortgage were executed; or, if she was mentally unsound having received the benefit of the contract from a person acting in good faith and without notice of her infirmity and being unable to make restitution and place the opposite party *in statu quo,* will not now be allowed to avoid the contract at the suit of her committee. In either event the trial court was justified in reforming the notes and enforcing the same in conjunction with the mortgage set forth.

The judgment is therefore affirmed.