KLIEWER, Gdn, v. BODENHEIMER et ux.

No. 32720.   Sept. 9, 1947.

*184 P. 2d 456.*

J. Wilford Hill, of Cherokee, and Albert L. McRill, of Oklahoma City, for plaintiff in error.

Halley, Douglass & Felix, of Oklahoma City, for defendants in error.

108

LUTTRELL, J. This action was brought by plaintiff F. C. Kliewer, guardian of the estate of C. G. Moody, an incompetent, to cancel a deed made by Moody to defendants, B. H. Bodenheimer and Edith Bodenheimer, conveying certain farm land in Alfalfa county, and for an accounting. At the conclusion of the evidence, the trial court rendered judgment for defendants, and plaintiff appeals.

Plaintiff's petition alleged that at the time Moody sold his farm to defendants he was not mentally competent to understand and transact business of that nature, and that the price paid by defendants for the property was grossly inadequate. The trial court found that Moody was competent, and understood and knew what he was doing when he made the sale, and further found that the consideration paid by defendants was not grossly inadequate.

Undisputed facts are that Moody and defendants owned and resided upon adjoining farms; that on April 14, 1944, they entered into a written contract for the sale of Moody's farm, and certain personal property thereon, as follows:

"April 14, 1944

"Received of B. H. Bodenheimer $1000.00 for payment on the N.E. 28-26-10, and all crop on land, and stock and machinery with the consideration of $9250.00, 3 combines, 2 One-ways, W. 30 International Tractor on Rubber, Plow, Feed Grinder Truck, 2 Drills, Windmill, 2 cows, 14 Hogs, 100 chickens and little chickens. This deal is to be closed in 90 days C. G. Moody is to hold possession for 90 days or until this deal is closed, and furnish merchantable Title.

"C. G. Moody
"B. H. Bodenheimer

"Witnesses:

"E. B. Bodenheimer"

That when the contract was executed B. H. Bodenheimer gave Moody his check for $1,000, and a copy of the contract, and on the same day they went together to the city of Jet to arrange for a Federal Land Bank loan to be procured on the farm by Bodenheimer to enable him to pay the balance of the purchase price; that the Land Bank refused to make the loan on the Moody farm, which was encumbered by a mortgage of $3,497.28, and that Bodenheimer procured a loan on his own farm. On June 15, 1944, at the bank in Jet, Bodenheimer paid to Moody the balance due, after deducting the amount of the mortgage on Moody's land, and Moody executed and delivered to Bodenheimer a warranty deed to the land, the deed naming the defendants, who are husband and wife, as grantees. On the same date the banker, at the request of Moody, wrote out an additional or supplemental contract, dictated by Moody, providing that Moody was to have the use of the building on the farm for 90 days from June 15th, and providing further that any machinery not listed in the original contract of April 14th was to belong to Moody. This supplemental contract also provided that Bodenheimer should pay Moody for 118 bushels of grain which was on the place on April 14th, the price to be paid being $1.25 per bushel. Moody remained on the premises, and on September 14, 1944, one day before the 90 days time he was given by the supplemental contract expired, he was declared incompetent and plaintiff was appointed guardian of his estate. This action was filed on the same day. At the time these transactions occurred Moody was some 68 years of age, a widower, and he and an unmarried sister lived on the farm.

Plaintiff's sole contention is that the judgment of the trial court is contrary to the law and the evidence. The case is one of equitable cognizance, and since the only error of law of which plaintiff complains is the rendition of the judgment for defendants, it follows that if the judgment is not clearly against the weight of the evidence it must be affirmed. Ball v. Fleshman, 183 Okla. 634, 83 P.2d 870.

In support of his contention that the evidence establishes that Moody was in-

competent to enter into a transaction of this nature, and was therefore entitled to rescind under 15 O.S. 1941 §23, plaintiff calls attention to the testimony of Moody, who testified as a witness for plaintiff. We have examined his testimony with care. It is true that on the witness stand he appeared confused and uncertain about the terms of the contract of April 14th. He knew he was selling the farm, but states that he understood that he was to be paid for the stock, machinery, and chickens in addition to the price specified in the contract, and that there was no agreement that the amount of the mortgage was to be deducted from the purchase price stated in the contract. But he admitted that he permitted defendants to remove the chickens, hogs, cows, and part of the machinery before the deed was executed and delivered, although he testified that no selling price had been agreed upon as to them. His chief difficulty at the trial seems to have been that he could not remember distinctly just what was said and done in connection with the deal, although he could remember the age of his cows, and what he paid for one; the weight of his chickens, the amount of grain he had in his bins, and what machinery defendants remover and what they left. Aside from this loss of memory, his answers to questions propounded were rational and his mind seemed clear.

The only witnesses who testified that Moody was incompetent were two ladies living in Enid. They testified that they had known him, one for eight or nine years, and the other for five years, and had visited back and forth with him and his sister, seeing him about twice a month. It appears that several years before he sold the farm to defendants he had been beaten about the head with a pair of brass knuckles, which had impaired his hearing, and that he had also suffered an injury to his spine which kept him in the hospital for several months. One lady testified that he had never been of sound mentality since she knew him, and that he got worse after his injuries. Both testified that he showed them the contract of April 14th, and insisted that he was getting $9,250 for the farm without deducting the amount of the mortgage. Both testified that in their judgment he was not capable of attending to business affairs. Neither of these witnesses had transacted any business with Moody, or observed him when he was transacting business.

Defendants produced seven witnesses who had known Moody for from 12 to 15 years, including the president of the bank at Jet where Moody transacted his banking business, and another employee of said bank. The president of the bank testified that he had known Moody for 15 years and had always considered him competent to handle his property and business. He testified that he handled the Federal Land Bank mortgage on Moody's farm, and that on April 14th, when Moody and Bodenheimer came to see him about the placing of a larger loan on the farm to take up the old mortgage and pay Moody the balance of the purchase price, Moody showed him a list of personal property which he told the witness he had sold to Bodenheimer along with the farm. He testified that Moody personally dictated to him, word for word, the supplemental contract of June 15th hereinabove referred to, and that at the time the deal was closed Moody, in the opinion of the witness, was mentally competent and understood what he was doing; that they made the consideration in the deed $7,500, which was the value they placed on the land, in order to save on revenue stamps; that they explained to witness that Bodenheimer was also getting all the machinery on the farm, the grain, cattle, chickens and hogs.

The bank employee, who was the son of the president, testified that the bank had made Moody ten or fifteen loans in the past ten years, and that he came in contact with Moody frequently at the bank; that he considered Moody a little eccentric, but always considered

him capable of transacting his business, and had never seen anything wrong with his mental condition.

The other witnesses produced by defendants resided in the vicinity of Moody's farm, and had known him for some 15 years or more. All came in frequent contact with him, and all testified that he was mentally competent; that there had been no change in his mentality since they had known him.

Plaintiff also stresses the fact that Moody was declared incompetent three months after the sale of his farm. But this does not establish his incompetency at a prior date. Keenan v. Scott, 99 Okla. 63, 225 P. 906.

The finding and judgment of the trial court that Moody was not mentally incompetent or of unsound mind at the time he sold the farm to defendants, is not clearly against the weight of the evidence.

Plaintiff does not contend here that the record reflects such inadequacy of consideration as would require a court of equity to set aside the sale, and our examination of the record convinces us that no such inadequacy is shown. In fact, one witness testified that, shortly before making the first contract with Bodenheimer, Moody offered to sell the farm and personal property to the witness for $8,500.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, and WELCH, JJ., concur.