**William N. ROGERS (Plaintiff), Appellant,**

v.

**Hazel M. ROGERS (Defendant), Respondent.**

No. 29326.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1955.

Lawrence J. McKim, Samuel J. Kevrick, St. Louis, for appellant.

Eugene P. Walsh, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action for divorce wherein there was a suggestion of the insanity of the defendant and the court appointed a guardian ad litem for her. The plaintiff was denied a decree of divorce and he prosecutes this appeal.

The petition alleged that the plaintiff married the defendant in 1942 and lived with her until September, 1944. There was an allegation charging indignities. It was asserted that "the defendant continually nagged and quarreled with plaintiff over trivial matters and had a violent and uncontrollable temper." It was also alleged that the defendant was cold and indifferent toward the plaintiff and her children by a former marriage and refused to cook meals or to do her housework. It was also charged that she permitted her former husband "to harass and annoy plaintiff and continually compared plaintiff with him."

Upon suggestion by the plaintiff of the defendant's insanity the court appointed a guardian ad litem, who, by answer, merely put the plaintiff upon strict proof of the allegations of the petition.

The evidence presented is extremely brief.

Plaintiff testified that he and the defendant were married at Hillsboro, Missouri, on April 2, 1942, and that he separated from her on September 15, 1944. When asked

how his wife treated him during the time they lived together as husband and wife, he replied, "Well, she had a quite violent temper at times, she wouldn't fix the children's meals—that's her children, I never adopted them legally." He was asked if she nagged and quarreled, to which he answered "quite a bit". He said that her refusal to cook meals took place quite often and that the house was dirty because she would not take care of it. She had two children by a prior marriage who lived with the parties and their father would send telegrams to them which the plaintiff found disturbing.

The defendant at the time of the trial was an inmate of the State Hospital for insane located at 5400 Arsenal Street, in the City of St. Louis. The plaintiff was asked when the defendant was first taken to the Arsenal Street hospital and the answer given was, "The first time she was out there, it was under the City." He was asked, "That was a few months after the separation?" To this he answered, "Well, she was at Malcolm Bliss, and they transferred her out there." He stated that his wife had been taken out of the hospital three times at the request of her mother who tried on those occasions to keep the defendant with her. Each attempt was a failure and the plaintiff was required to take his wife back to the St. Louis State Hospital.

The plaintiff called as a witness a lady who lived next door to his home. She testified that Rogers treated his wife well but that Mrs. Rogers had a "violent and ungovernable temper", which she exhibited toward her husband and her children. The witness also said that Rogers' home was not kept "like it should be".

Another witness testified that he had been a friend of the plaintiff for many years and had visited in Rogers' home. He was asked if he had ever seen defendant display her temper toward the plaintiff and her children. His answer was: "I can't say about the children.. We were out with them at the time. This happened out in the car." There followed a cursory examination of the witness, which consisted of these questions and answers:

"Q. You were in the company of Mr. and Mrs. Rogers? A. Yes.

"Q. What did she do at that time? A. She just used this outburst, and lost her temper.

"Q. Did Mr. Rogers give her any cause to do that? A. No; it happened all of a sudden."

This was all that was elicited from this witness except for his statement that Rogers treated his wife well.

Upon the foregoing the plaintiff rested his case, and the guardian ad litem testified that he had a report from a Mrs. Anderson in charge of the hospital in St. Louis, which stated that:

"Mrs. Rogers has had three admissions to the hospital, the first time being on August 6, 1945. She was placed on convalescent leave, as improved, March 3, 1946. She was returned on March 30, 1946, and was discharged, unimproved, on January 22, 1947. She was re-admitted on August 20, 1951, and has been there continuously since that time.

"The diagnosis made by the staff, on September 20, 1951, is Schizophrenia, paranoid type, with affective features. As far as a physical diagnosis, she has a mid-thigh amputation, from carcinoma.

"She is a contract patient at Forty Dollars a month.

"Her opinion is there is no hope for her. From all of these admissions she thinks she is permanently insane."

Upon this evidence the court denied a divorce to the plaintiff and the plaintiff here asserts that the court erred in so doing in that there was a reasonable inference that the acts complained of were committed while the defendant was sane. Plaintiff cites us to but two cases which he considers

in support of his point, Dunn v. Dunn, 240 Mo.App. 87, 216 S.W.2d 141, 144, and Niedergerke v. Niedergerke, Mo.App., 271 S.W.2d 204, 207. In the Dunn case we stated: "All that we know of the defendant's mental state is that he is insane and was confined in 1943 in an institution for the insane, no presumption of prior sanity favors the plaintiff, * * *." The Niedergerke case had to do with the appeal of defendant whose insanity was in question and we stated: "It is apparent that the question of defendant's sanity during the times in question was not fully explored. The question of defendant's sanity was a concern of the State, as the third party to this action, whether or not the defense of insanity was relied upon in the pleadings."

There is nothing in the evidence in the case before us from which it may be determined when the onset of insanity occurred. There is no evidence of the time she was first committed to a hospital for the insane. It is true she was sent to the Arsenal Street asylum in St. Louis in August of 1946 but the plaintiff said that she was transferred to that institution from another. Even if evidence of the exact date of her first commitment to a mental institution were in evidence this would not constitute either proof or presumption that she was sane up to the time of the commitment, for, of course, she must have been insane before she could have been committed. It does not appear that either of the cases relied upon support the view of the plaintiff.

It is evident that the defendant at some time prior to August 6, 1945, was insane, but as to what that time was we cannot tell. The temper of which the plaintiff complains is described in his petition and evidence variously as "uncontrollable", "ungovernable", "violent", and as "an outburst". These conclusions to which the witnesses testified without a word of evidence of what was actually said or done by the plaintiff were more indicative of insanity than sanity, and the court may have considered this as evidence that the defendant was in fact insane at the time the indignities complained of were committed and that the defendant was not responsible for the acts charged against her.

In view of the foregoing, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and NOAH WEINSTEIN, Special Judge, concur.