Vivian I. SCHULER (Plaintiff), Appellant,

v.

Frederick L. SCHULER, non compos mentis, and Robert C. Reis, Guardian of the Person and Estate of Frederick L. Schuler, non compos mentis (Defendants), Respondents.

No. 29460.

St. Louis Court of Appeals.

Missouri.

May 15, 1956.

with other women and numerous physical assaults upon plaintiff. The guardian's answer admitted the marriage and other formal allegations, denied the indignities and affirmatively pleaded Frederick's incapacity and unsoundness of mind "for a number of years prior to September 16, 1938," the date of the adjudication. At the close of all the evidence the court took the matter under advisement, later dismissed plaintiff's petition and denied her a decree of divorce. Following an unavailing motion for new trial plaintiff appealed.

A careful review of the evidence reveals that plaintiff is entitled to a decree of divorce if under the evidence Frederick was not of unsound mind but was legally accountable for his acts to and through June, 1938, provided Frederick's rights as an incompetent under guardianship have been properly protected. A detailed narrative of Frederick's marital offenses is not necessary because neither the sufficiency of the various indignities to render plaintiff's condition intolerable nor the proof of plaintiff's innocence is challenged.

The parties are not in agreement as to the burden of proof. Plaintiff contends that defendants had the burden of proof of insanity, while defendants contend that plaintiff had the burden of proof of sanity.

Boggiano & Hessel, Stephen A. Boggiano, St. Louis, for appellant.

Robert C. Reis, St. Louis, for respondents.

HOUSER, Commissioner.

On January 25, 1955 Vivian I. Schuler filed a petition for divorce against her husband, Frederick L. Schuler, non compos mentis, joining the guardian of his person and estate (an attorney) as a party defendant. The petition, inter alia, alleged the marriage on October 25, 1919, brief periods of separation during the intervening years, final separation in June, 1938, sanity from 1919 to June 1938, adjudication of Frederick as a person of unsound mind on September 16, 1938, his confinement since that date in a state hospital, the guardian's appointment and numerous indignities afforded to plaintiff during the period of cohabitation including a quarrelsome nature, violent temper, gambling, repeated requests for a divorce, refusal to pay for necessary operations, association

There is a legal presumption, applicable in divorce cases, Willis v. Willis, Mo.App., 274 S.W.2d 621, and Dunn v. Dunn, 240 Mo.App. 87, 216 S.W.2d 141, that every person is sane. Fendler v. Roy, 331 Mo. 1083, 58 S.W.2d 459; Reynolds v. Maryland Casualty Co., 274 Mo. 83, 201 S.W. 1128; State ex rel. Bevan v. Williams, 316 Mo. 665, 291 S.W. 481; 31 C.J.S., Evidence, § 147, p. 826; 28 Am.Jur., Insane and Other Incompetent Persons, § 121, p. 751; Jones on Evidence, Fourth Edition, Vol. 1, § 59. This presumption obtains until it takes flight in the light of contrary evidence, Willis v. Willis, supra; Edwards v. Business Men's Assur. Co. of America, 350 Mo. 666, 168 S.W.2d 82; State ex rel. Bevan v. Williams, supra, but the allegation and suggestion by a plaintiff of the insanity of defendant and that defendant

was previously adjudicated to be a person of unsound mind does not destroy the presumption that defendant was sane prior to the date of adjudication. While such adjudication and the appointment of a guardian gives rise to a presumption of continued mental incapacity (unless accidental or temporary in nature), State ex rel. Bartlett v. Littrell, 325 Mo. 35, 26 S. W.2d 768; Kiehne v. Wessell, 53 Mo.App. 667; Richardson v. Smart, 65 Mo.App. 14; First Christian Church in Salem v. McReynolds, 194 Or. 68, 241 P.2d 135; Schindler v. Parzoo, 52 Or. 452, 97 P. 755, that presumption is *prospective* in its operation from the date of the adjudication, Shupp v. Farrar, 85 Ohio App. 366, 88 N. E.2d 924; First Christian Church in Salem v. McReynolds, supra, and not retrospective. Rath's Committee v. Smith, 180 Ky. 326, 202 S.W. 501; Shupp v. Farrar, supra, 88 N.E.2d loc. cit. 926: "Contestants contend also that from the adjudication of insanity on November 24, 1947, it is presumed that the witness was insane on August 8, 1947. The general rule is that presumptions are prospective and not retrospective. * * *" An adjudication of insanity does not determine the insanity of a person at a prior time. In Rhoades v. Fuller, 139 Mo. 179, 40 S.W. 760, a suit to rescind a contract for the exchange of real property on the ground of the insanity of the grantor at the time of the trade, the trial court was convicted of reversible error in admitting in evidence the record of the insanity inquest (at which the grantor was adjudged to be of unsound mind and incapable of managing his affairs) on the issue of the sanity of the grantor at the time of the execution of the deed some twenty days previously. Referring to the record the Supreme Court of Missouri said, 139 Mo. loc. cit. 187, 40 S.W. loc. cit. 761: "It raised no presumption as against him of Rhoades' insanity at the time of the trade, which was consummated something over 20 days before the date of the inquest. It is no uncommon occurrence for persons who have never manifested any evidences of insanity to become violently insane within a very short space of time.". In Kliewer v. Bodenheimer, 199 Okl. 107, 184 P.2d 456,

loc. cit. 458, the Supreme Court of Oklahoma said: "Plaintiff also stresses the fact that Moody was declared incompetent three months after the sale of his farm. But this does not establish his incompetency at a prior date." In Longbotham v. Longbotham, 119 Minn. 139, 137 N.W. 387, loc. cit. 389, the Supreme Court of Minnesota said: "The fact that the defendant had been adjudged insane and committed to the hospital for treatment does not necessarily establish that he was insane, within the rule stated, when the several acts of cruelty were committed." See also First Christian Church in Salem v. McReynolds, supra; Schindler v. Parzoo, supra; 44 C.J. S., Insane Persons, § 32(2), p. 90. In Larsson v. Cedars of Lebanon Hospital, 97 Cal. App.2d 704, 218 P.2d 604, loc. cit. 606, the California Court of Appeals said: "The adjudication of incompetency on June 24, 1941, did not raise a presumption that plaintiff had been incompetent prior to that time." Other cases indicating that an adjudication of insanity raises no presumption of insanity at an earlier date include Avery v. Avery, 42 Cal.App. 100, 183 P. 453; Kliewer v. Bodenheimer, supra; Andrews v. Andrews' Committee, 120 Ky. 718, 87 S.W. 1080, 90 S.W. 581; Shirley v. Taylor, 1844, 5 B.Mon. 99, 44 Ky. 99; Wathen v. Skaggs, 161 Ky. 600, 171 S.W. 193; Hentz v. Wallace's Adm'r, 153 Va. 437, 150 S.E. 389; McGregor v. Keun, 330 Ill. 106, 161 N.E. 99; Black v. Boyer, Tex. Civ.App., 21 S.W.2d 1094. Otherwise stated, "inferences of fact and presumptions usually do not run backward." Thus in Forbis v. Forbis, Mo.App., 274 S.W.2d 800, the Springfield Court of Appeals held that evidence that a party was of unsound mind on January 4, 1952 and was so adjudicated on July 3, 1953, standing alone, was not presumptive evidence that the same condition existed on February 12, 1951. And see Glover v. Bruce, Mo.Sup., 265 S. W.2d 346; Nash v. Normandy State Bank, Mo.Sup., 201 S.W.2d 299; Snowwhite v. Metropolitan Life Ins. Co., 344 Mo. 705, 127 S.W.2d 718; Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W.2d 21, and 31 C.J.S., Evidence, § 140, p. 789, for further statement of the rule that mere

proof of the existence of a present condition, or a condition at a given time, does not raise any presumption that the same condition existed at a prior time.

Indeed, in the instant situation, the opposite presumption obtains. Thus in Hill-Dodge Banking Co. v. Loomis, 140 Mo.App. 62, loc. cit. 70, 119 S.W. 967, loc. cit. 969, Judge Goode, speaking for this court, said: "But prior to an inquest sanity is presumed, and the burden of proving insanity rests upon him who relies on that state of mind." In First Christian Church in Salem v. McReynolds, supra, 241 P.2d loc. cit. 138, the Supreme Court of Oregon said: "The first rule to which we now refer presumes the existence of mental competency prior to an adjudication to the contrary." And see 28 Am.Jur., Insane and Other Incompetent Persons, § 121, p. 751, and Schindler v. Parzoo, supra.

■ Since sanity is presumed prior to adjudication of insanity, or until evidence of insanity is introduced, it follows that the burden of proof of the fact of insanity prior to adjudication is upon the party who asserts the insanity of himself or another as the basis of a claim or defense. This rule, almost universal,[1] has been applied in suits to set aside deeds, Edinger v. Kratzer, Mo.Sup., 175 S.W.2d 807; Chadwell v. Reed, 198 Mo. 359, 95 S.W. 227; annulment actions, Forbis v. Forbis, supra; suits on ordinary contracts, Boydston v. Bank of Camden Point, Mo.App., 141 S.W.2d 86; Nichols & Shepard Co. v. Hardman, 62 Mo.App. 153; suits on promissory notes, Hill-Dodge Banking Co. v. Loomis, supra; suits on insurance policies, Fendler v. Roy, supra; and prosecutions for crime. State

v. Hardy, 359 Mo. 1169, 225 S.W.2d 693. In Chadwell v. Reed, supra, 198 Mo. loc. cit. 379, 95 S.W. loc. cit. 233, the Supreme Court of Missouri said: "The presumption is that all men are sane, and it devolves upon those who assert the contrary to prove it by a preponderance of, or the weight of, the testimony, * * *. A party claiming under a deed is not bound to prove the sanity of the person making it, but the burden of proving the unsoundness of mind and incapacity of the grantor, at the time of its execution, rests with the party seeking to impeach it. * * *" And in Wathen v. Skaggs, supra, 171 S.W. loc. cit. 195, the Court of Appeals of Kentucky said: "The fact of the inquest held a few days after the execution of the conveyance sought to be canceled, upon which inquest Joseph H. Wathen was adjudged incompetent to manage his estate, did not operate to relieve the plaintiffs of their duty to establish the asserted mental incapacity upon the part of Joseph H. Wathen as of the date of the conveyance." And see Jones on Evidence, Fourth Edition, Vol. 1, § 188, p. 354; 44 C.J.S., Insane Persons, § 149, p. 322; 28 Am.Jur., Insane and Other Incompetent Persons, § 122, p. 752. Conversely, the burden of proving sanity is not on a plaintiff asserting it, where defendant is relying upon the defense of insanity. Thus, in Jacobs v. Richards (1854), 18 Beav. 300, 52 Eng. Reprint 118, a proceeding by a mortgagee against an adjudged insane person and his committee to foreclose a mortgage in which the defense of invalidity of the mortgage on account of the insanity of the mortgagor was raised, it was urged on appeal that plaintiff was bound to prove the sanity of mortgagor. The Master of Rolls held that the burden was on defendants to make a case to set

1. An exception is to be found in suits to contest wills on the ground of incapacity of the testator by reason of insanity. The basis for this exception is the statutory requirement (§§ 468.130, 468.140 RSMo1949, V.A.M.S.) that persons who make wills be "of sound mind," and the nature of a statutory suit to contest a will, which has the effect of vacating the judgment of the probate court admitting the will to probate, leaving the will un-proved unless and until it is established by the judgment of the circuit court, in which the proceedings are upon trial de novo, and in which the burden, as in the probate court, is upon the proponents of the will as a part of their case to show mental soundness at the time of the execution of the will. Weaver v. Allison, 340 Mo. 815, 102 S.W.2d 884, 110 A.L.R. 672.

aside the deed, and not having done so the deed must be taken as a good deed, saying: "When the courts set aside deeds for fraud, duress or intoxication, the burthen of proof lies on the party insisting that the deed ought not be acted on, and I see no ground why, where insanity is alleged, a different principle should be applied."

■ The burden of proof of insanity, therefore, was upon Frederick and his guardian to establish the affirmative defense of insanity which they asserted in their answer.

■ Recently in two appeals from judgments dismissing divorce cases for failure of proof decided by this court,[2] we ruled that upon a showing that an insane defendant had been confined to a mental institution no presumption of sanity prior to the time of the commitment favored plaintiff and that the burden was on plaintiff to prove the time when the onset of insanity occurred, i. e., that the causes for divorce occurred while defendant was sane. The reasoning, but not the result, of those rulings necessarily must be modified in the light of the instant opinion. In accordance with the general and almost universal rule, the sanity of the defendant in each of those cases should have been presumed until such time as the evidence showed the contrary, which in each instance was the date of defendant's admission to a mental institution. (There was no allegation or evidence of an adjudication of insanity.) In neither of them did defendant's guardian interpose the defense of insanity, i. e., that the acts charged against defendant were committed by him while insane. Therefore there was no burden on defendant to prove that fact. But when the guardian, by answer in the Dunn case, supra, and by evidence in the Rogers case, supra, showed that on a certain date defendant, suffering from a condition of permanent insanity, was admitted to a mental institution a rebuttable presumption of continued mental incapacity arose, imposing on plaintiff the burden of proving that the causes of divorce occurred prior to the date of admission (and therefore during the period of presumed sanity), or, if they occurred after the date of admission and while defendant was on parole or convalescent leave or after temporary discharge (and therefore during the period of presumed insanity); that defendant was sane at the time of their commission. Cook v. Cook, 1869, N.Y., 53 Barb. 180; Walker v. Walker, 1925, 140 Miss. 340, 105 So. 753, 42 A.L.R. 1525. In the Dunn and Rogers cases plaintiff failed to make any such showing and therefore failed to make a case. We reaffirm the result in those appeals. We must, however, disaffirm the language of those opinions indicating that no presumption of prior sanity favored plaintiff and imposing in such case, generally, the burden of proof of sanity on plaintiff. As indicated, that burden rests on plaintiff only if it is shown that the causes of divorce occurred after the insanity is shown to have had its inception.

■ The guardian takes the position that by agreeing to a reconciliation with Frederick and resuming cohabitation with him in 1936 plaintiff condoned all past marital offenses; that the burden was on plaintiff to prove marital offenses subsequent to 1936 committed at a time while Frederick was sane, if the prior offenses are to be revived. Plaintiff more than satisfied the requirements in this connection. Although not burdened with the task she introduced proof of his sanity, and satisfied the requirements of the doctrine of revival by her testimony that after each and every separation, including the 1936 separation, Frederick renewed and continued his association with other women and that further acts of cruelty occurred. The "last straw," precipitating the final separation, was a scene between Frederick and a woman associate who came to the home of plaintiff and plaintiff's mother and there engaged with Frederick in an argument over money.

■ The guardian contends that plaintiff's affidavit of commitment, made on

---

2. Dunn v. Dunn, supra; Rogers v. Rogers, Mo.App., 285 S.W.2d 58.

July 1, 1938, tends to establish Frederick's insanity "for a long period prior to 1938." In it she swore that Frederick, to the best of her judgment, was of unsound mind, but did not state for what period he had been of unsound mind. The fact that Frederick was of unsound mind on July 1, 1938, or that he was so adjudicated on September 16, 1938, raises no inference or presumption that he was of unsound mind prior to June, 1938, for the reason that, as we have seen above, inferences of fact and presumptions usually do no run backward.

Plaintiff's evidence on the issue of sanity was her own testimony that Frederick was a person of sound mind from the date of marriage until the final separation in June, 1938 and that during the period of their cohabitation he did not do anything that would lead her to believe that he was a person of unsound mind. The parties' now adult son testified that from the time he could first remember until the time of the separation of his parents his father was a person of sound mind. A railroad auditor testified that the work in which Frederick was engaged for the Missouri Pacific Railroad was a difficult, complicated job requiring for its performance ability, intelligence and the use of one's mental processes. A business associate of Frederick's who worked in the same department with him from 1922 until 1932 and who saw him every day testified that he was a person of sound mind. He conceded that Frederick later began to act strange and abnormal, became irritable, quarrelsome and often was ready to fight over trifles; that this change came over him a year or a year and a half before he was discharged for insubordination in 1936, but that he did not consider Frederick to be of unsound mind. Frederick's dentist testified that he saw nothing to indicate that Frederick was of unsound mind; that he acted like a normal person during the semi-annual visits to his office for dental treatment for 25 years up to 1932 or 1933.

Although the burden of proof of the affirmative defense of insanity was on defendants, no substantial effort to sustain that burden was made in Frederick's behalf. The guardian did not call a single witness, lay or expert, to testify that Frederick was insane at any time or that the acts complained of were committed by his ward at times when he was insane. The only evidence offered by the guardian in any way tending to support the defense of insanity was Defendants' Exhibit B, consisting of portions of the state hospital records in Frederick's case. Exhibit B contained a signed statement by plaintiff indicating that Frederick had exhibited tendencies toward sexual perversion in 1936 and prior thereto; that he had exhibited delusions of persecution and was mentally disturbed during the period (unspecified) when the parties lived in Washington, D. C.; that Frederick poured ice water in plaintiff's ear while she was sleeping "just to see what she would do;" that in 1927 he locked his arms around plaintiff and broke her rib, and that "he used to take the baby's hands and feet in his hands and squeeze them until the child would scream out with pain" at which time he would get "a most peculiar look on his face," seem to smile, and bare his teeth. The record of Frederick's admission to the hospital on July 4, 1938 revealed the following: "Relative's statement: 11 yrs. ago, first attack. Had to be placed in a barred room at Mo. Pacific Hosp. 8 years ago, while on train he began throwing knives at wife. Sometimes he wakens at night and drags wife out of bed by her hair. Sometimes talks meaningless. Always threatens to kill anyone on least provocation. Threatened to kill family and boss." A staff conference summary dated August 31, 1938 stated: "Present Disposition—unfriendly, violent outbursts of temper, discourteous and untrustworthy. Special Tendencies—homicidal, beat his relatives and threatened to kill them. Asocial—avoided contacts with other people. Family History—Father: had violent temper and was described as being severe in disciplining family, frequently ran out of home with a carving knive—died of pneumonia. Mother:—regarded as being peculiar, she feels that people are making faces at her; described as being nervous and high strung. Second Cousin: Patient in this institution at

present time." A staff conference diagnosis dated September 2, 1938 gives the names of 11 doctors who found Frederick to be suffering from paranoia, and one doctor whose tentative diagnosis was "schizophrenia reaction type of psychosis * * * definitely psychotic; is a dangerous individual and has homicidal tendencies. At no time should he be allowed privileges." A later diagnosis giving opinions of 11 doctors indicated paranoia and sexual abnormalities, and classified him as institutional and dangerous.

Questions about the admissibility of certain parts of these records have been raised. Assuming (but not deciding) Exhibit B admissible in toto, it is apparent that it does not constitute a sufficient evidentiary basis for the judgment of the trial court dismissing plaintiff's petition and denying her a decree. The mere showing of insane delusions, unrestrained impulsiveness and lack of control, psycho-neurosis, depraved character or licentious disposition is not sufficient to sustain the defense of insanity in an action of divorce. Willis v. Willis, supra, 274 S.W.2d loc. cit. 627 et seq., and authorities cited. The insanity "must be such as deprives the defendant's conduct of the element of wilfulness and as divests the defendant of the use of his reason to the extent of his being unable to differentiate between right and wrong, or that, if capable of so differentiating, defendant must be acting by force of an irresistible impulse generated by a diseased mind and not by volition." Willis v. Willis, supra, and authorities cited; Niedergerke v. Niedergerke, Mo.App., 271 S.W.2d 204, loc. cit. 207, and authorities cited. There was a complete absence of evidence that the acts complained of were committed by Frederick at times when he was suffering from a mental aberration of such character as to make his conduct involuntary, or to deprive him of the ability to differentiate between right or wrong, or to incapacitate him from willing one course or the other. Exhibit B was not sufficient to sustain the dismissal and therefore the judgment must be reversed.

 It does not follow, however, that we should remand the cause with or-

ders to grant a divorce to plaintiff, for the reason that we are not satisfied from this record that Frederick's rights have been adequately safeguarded in the preparation for and trial of this case. The question of Frederick's sanity is a concern of the state, as a third party to a divorce action. Niedergerke v. Niedergerke, supra; Bethel v. Bethel, 181 Mo.App. 601, 164 S.W. 682. Frederick's guardian, under a duty to defend all actions instituted against his ward, § 458.310 RSMo 1949, V.A.M.S., was bound to take all necessary steps reasonably calculated to protect and promote the interests of his ward in connection with the litigation. Apparently the guardian was of the opinion that substantial evidence of the defense of insanity was available since he filed an answer affirmatively alleging the defense, but it was his duty to support the defense by adducing all available competent evidence tending to prove that during the critical period the acts of his ward were involuntary and that he was incapable of wilful and deliberate conduct and could not differentiate between right and wrong with respect to the acts he committed, so as to excuse him from the legal consequences which would follow if he were sane. On an impartial review of the record the question arises whether this duty has been discharged with the required diligence. The guardian cross-examined plaintiff and her witnesses in a competent manner and at the close of plaintiff's case filed a motion to dismiss, but when the motion was overruled the guardian was content to introduce plaintiff's affidavit of commitment and Defendants' Exhibit B and thereupon to rest. Missouri Pacific Hospital records of Frederick's "first attack" in 1927 were not introduced in evidence. No other evidence as to the nature, seriousness, consequences and lasting effect of the first attack was adduced. None of the 12 doctors who, from a perusal of the state hospital records, appear to have been familiar with the case in 1938, was called to testify. No medical evidence whatever was brought forward. The guardian did not call Frederick's mother or other relatives or associates to testify with respect to his mental condition during the critical

period, nor does it appear that other facts plainly bearing upon the question of Frederick's sanity, such as his first attack, his experience at Missouri Pacific Hospital, and the suggestion of insanity in the family history, were fully explored.

Pursuant to our duty to afford every protection to the rights of insane persons it is the recommendation of the Commissioner that the judgment be reversed and the cause remanded for a new trial in order to give the guardian an opportunity to properly develop the issue of insanity. Niedergerke v. Niedergerke, supra; Pollard v. Pollard, Mo.App., 98 S.W.2d 132; Erlacher v. Erlacher, Mo.App., 145 S.W.2d 974.

.PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.

ANDERSON, P. J., RUDDY, J., and SAM C. BLAIR, Special Judge, concur.